# IN THE OREGON TAX COURT

## CRASKE et al
*v.*
## DEPARTMENT OF REVENUE
(TC 1432)

Carlos Edward Boyer, Carlos Edward Boyer, P.C., Hillsboro, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered October 9, 1981.

**CARLISLE B. ROBERTS, Judge.**

The plaintiffs appealed from the defendant's Order

No. I 80-41, dated August 6, 1980, which held that the Craske Family Trust was a nullity for Oregon personal income tax purposes. The defendant transferred alleged trust income to the Craskes' personal income, resulting in the assessment of deficiencies against the plaintiffs' Oregon personal income taxes for calendar years 1977 and 1978.

On June 16, 1977, Dr. Craske executed a declaration of trust, creating the "Craske Family Trust" and naming his wife and their 18-year old son, W. Don Craske III, as trustees. The irrevocable trust was for a term of 25 years unless terminated by the unanimous decision of the trustees. On June 17, 1977, Mrs. Craske conveyed her rights in all of the Craskes' real and personal property plus "the exclusive use of my lifetime services and all of the currently earned remuneration therefrom" (Def Ex B) to Dr. Craske. Thereupon, Dr. Craske transferred all of his real and personal property, investments, life insurance, bank accounts and his lifetime services (and those of his wife) and earned remuneration (with the specific exclusion of his services as a physician) to the trust.

The personal property conveyed to the trust by the plaintiffs did not include the plaintiffs' three automobiles; these were leased to the trust for $1 plus a specified monthly rental sufficient to retire the outstanding liens against the automobiles. The trust agreed to pay the operating and service fees for the three automobiles.

In return for the conveyance of the plaintiffs' real and personal property and their lifetime services (except Dr. Craske's services as a physician), the trust issued 100 "units of beneficial interest"[1] to Dr. Craske. He subsequently transferred 50 units to Mrs. Craske and 25 units to each of their two sons.

---

[1] The "units of beneficial interest" are described in the Declaration of Trust (Def Ex A) on the unnumbered sixth page thereof. "The Beneficial Interests," as a convenience, for distribution are divided into One Hundred (100) Units. They are non-assessable, non-taxable, non-negotiable, but transferable; and the lawful possessor thereof shall be construed the true and lawful owner thereof. * * *

"Said Beneficial Certificate entitles the holder thereof to a pro rata share of any distribution of income distributed by the Trustees in their sole discretion, and to a pro rata share of the Trust corpus upon the termination of the Trust. * * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor any undivided interest therein, nor in the management thereof; * * *."

Dr. Craske had previously created a professional corporation (herein called the PC), pursuant to ORS chapter 58, to conduct his medical practice, with himself as sole stockholder and president and Mrs. Craske as secretary. On July 1, 1977, the PC executed a bill of sale to the trust for certain medical and office equipment and fixtures for a total of $8,204.17. That same day the trust and the PC entered into an agreement whereby the trust leased back the office building, furnishings, equipment and instruments to the PC and agreed to provide management services for the PC. In consideration thereof, the PC agreed to pay to the trust an amount equal to 35 percent of the gross income of the PC. The management contract provided that the trust would supply all office supplies and materials required by the PC, provide for an office manager and bookkeeper for the PC and provide all accounting and supervision of billings for the PC. (Def Ex K.)

The agreement with the PC was subsequently amended, specifying fixed monthly rentals for the office building ($400), parking lot ($50), equipment ($275), plus 28 percent of the PC's gross income, to begin on January 1, 1978.

The defendant based its determination that the trust was a nullity on the conclusion that (1) the trust is and was devoid of economic realty or, in the alternative, (2) the grantor-creator is the owner of the trust and taxable thereunder pursuant to IRC §§ 671 through 677.

The plaintiffs' response was a contention that Dr. Craske did not retain sufficient control of the trust to bring the trust under the grantor trust rule. The plaintiffs based their argument on the following allegations: (1) That the beneficiaries were adverse parties; (2) that no provisions were made for trust income or corpus to provide for any of the husband-grantor's obligations;[2] (3) that the trust was established for a period of 25 years; (4) that Dr. Craske had no power to revoke or modify the trust; and (5) that he retained no reversionary interest.

---

[2] Counsel for the respective parties, in their examination of Dr. Craske and in their oral argument and briefs, spent considerable effort explicating the fact that the doctor had his own income and was not a grantee (although patently a beneficiary) of the trust. The evidence shows that, although Mrs. Craske was not a "creator" of the trust, she was a de facto grantor, grantee and beneficiary, as well as the active, designated trustee.

■ The plaintiffs allege that the beneficiaries are adverse parties and therefore the grantor has relinquished control over the trust. Oregon has adopted the federal Internal Revenue Code (1954) as it pertains to the facts of this suit. IRC § 672 states that a related party shall be presumed to be subservient (hence nonadverse) to the grantor in respect of the exercise or nonexercise of powers conferred on him, unless such party is shown not to be subservient by a preponderance of the evidence.

The evidence in this case is that Dr. and Mrs. Craske were living together in the personal residence (deeded to the trust) with their two sons, with the older son (one of the two trustees) attending a nearby college during the pertinent years. When Dr. Craske moved his practice to Florida, late in December 1978, he was required to take the Florida medical examination in order to be certified in that state. During his study, preparatory to taking the Florida examination, he restricted his Oregon practice. This restriction resulted in a diminution of the trust's normal operating cash. Therefore, the trustees, on December 2, 1978, authorized the trust to borrow up to $3,000 from Mrs. Craske to cover current operating expenses. (Def Ex M, Minute #56.)

The trust's operating expenses included, among other items, expenses and maintenance of the family residence wherein Dr. Craske resided and expenses and maintenance of the family automobiles, one of which Dr. Craske used for his own purposes.

The trustees' action in this economic emergency, brought about by Dr. Craske's restricting his practice in order to study for an arduous examination, seems more like the actions of a close-knit family than the actions of adverse parties.

In addition, the beneficial interests distributed by the trust to Mrs. Craske and the plaintiffs' sons are "* * * non-assessable, non-taxable, non-negotiable, but transferable; * * *. Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor any undivided interest therein, nor in the management thereof; * * *." (Def Ex A.) Such a certificate does not create an adverse interest in a trustee or beneficiary. *Paxton v. Comm.,* 520 F2d 923 (9th Cir 1975), 36 AFTR2d 75-5432.

■ Plaintiffs allege that no provisions were made in the trust for payment of the creator's obligations (as is provided in some "family trusts"). However, testimony revealed that the family residence, a four-bedroom home located on 11 acres and valued at $125,000, was transferred to the trust for "a nominal sum." Defendant's Exhibit E evidences that a consideration of $10 was paid by the trust for this property. All of the household furnishings were also transferred to the trust. The plaintiffs and their sons continued to reside in the family residence. The trust paid for expenses, maintenance and improvement of the residence, including the addition of insulation, storm doors and thermopane windows throughout. (Def Ex M, Minute #46.) Mrs. Craske testified that no rent for the family home was ever paid to the trust. Therefore, the trust's property was used to support Mrs. Craske and the minor son, whom the grantor is legally obligated to support, as well as to provide accommodations for Dr. Craske and the older son.

In a lengthening list of cases,[3] federal courts have

---

[3] The chronological history of the "equitable family trust" possibly begins with *Elmer Irvin Trust,* 29 TC 846 (1958). The instrument used by the creator in that case was a copyrighted, printed instrument prepared by the National Pure Trust Service. "The body of the instrument is a wilderness of high-sounding words and phrases, obviously designed as selling points for the service by the author, rather than to serve a genuine trust need." (29 TC at 849.) This is also true of the trust instrument prepared by the Educational Scientific Publishers (quoted and referred to in many of the cases cited below), which instrument was undoubtedly copied by the Institute of Individual Religious Studies (which sold to Dr. Craske the form of trust and the forms for minutes used in the instant case).

Other cases showing the history and development and the futility (under current law) of this tax avoidance plan are found in numerous United States Tax Court memorandum opinions, listed here, *ad nauseam,* in chronological order: *George T. Horvat,* TC Memo 1977-104, ¶ 77,104 P-H Memo TC, *aff'd per order* 7th Cir, 6-7-78, *cert. denied,* 440 US 959 (1979); *Douglas H. Damm,* TC Memo 1977-194, ¶ 77,194 P-H Memo TC; *Ronald E. Morgan,* TC Memo 1978-401, ¶ 78,401 P-H Memo TC; *John J. Nelis,* TC 1979-42, ¶ 79,042 P-H Memo TC; *Wallace J. Vnuk,* TC Memo 1979-164, ¶ 79,164 P-H Memo TC; *Mark M. Mullenaux,* TC Memo 1979-293, ¶ 79,293 P-H Memo TC; *Anthony Mirenda,* TC Memo 1980-252, ¶ 80,252 P-H Memo TC; *Harvey O. Woebbeking,* TC Memo 1980-259, ¶ 80,259 P-H Memo TC; *Gregory R. Dekutowski,* TC Memo 1980-260, ¶ 80,260 P-H Memo TC; *Gregory T. Dombrowski,* TC Memo 1980-261, ¶ 80,261 P-H Memo TC; *George T. Horvat,* TC Memo 1980-266, ¶ 80,266 P-H Memo TC; *Peter Y. Taylor, Jr.,* TC Memo 1980-313, ¶ 80,313 P-H Memo TC; *J. John Gudenschwager,* TC Memo 1980-439, ¶ 80,439 P-H Memo TC; *Phillip D. Antonelli,* TC Memo 1980-544, ¶ 80,544 P-H Memo TC; *Chas. W. Basham, Jr.,* TC Memo 1980-545, ¶ 80,545 P-H Memo TC; *William R. Corcoran,* TC Memo 1980-546, ¶ 80,546 P-H Memo TC; *Peter Y. Taylor, Sr.,* TC Memo 1980-552, ¶ 80,552 P-H Memo TC; *William E. Gran,* TC Memo 1980-558, ¶ 80,558 P-H Memo TC; *LaVerne Schulz*

held that the so-called family trust arrangement is not effective in deflecting taxpayers' earnings from themselves to such a trust. *Vercio,* 73 TC 1246 (1980), appeal dismissed 1980 P-H 61,000 (10th Cir 1980);[4] *Markosian,* 73 TC 1235 (1980); *Wesenberg,* 69 TC 1005 (1978).[5]

Many of the family trusts were disallowed on the ground that the creators had attempted an assignment of income, voiding the basic principle that income is taxable to the one that earns it. *Lucas v. Earl,* 281 US 111, 50 S Ct 241, 74 L Ed 731, 8 AFTR 10287 (1930); *United States v. Basye,* 410 US 441, 93 S Ct 1080, 35 L Ed2d 412, 31 AFTR2d 73-802 (1973). *See also Commissioner v. Culbertson,* 337 US 733, 69 S Ct 1210, 93 L Ed 1659 (1948).

It appears that some attempt was made to avoid that pitfall by Dr. Craske's exclusion of his services as a physician (which provided the family's chief income) from the conveyance of his other "lifetime services" to the trust. Nevertheless, the evidence is overwhelming that the trust is devoid of economic reality. Both Dr. and Mrs. Craske conveyed other significant property to the paper entity. After the drafted contractual agreements purported to convey all real and personal property to the trust, what were the practical results?

■      There were no substantive changes in the lives of the

---

*et al,* TC Memo 1980-568, ¶ 80,568 P-H Memo TC; *Michael Papp et al,* TC Memo 1981-20, ¶ 81,020 P-H Memo TC; *Rolland A. Neve,* TC Memo 1981-39, ¶ 81,039 P-H Memo TC; *Oliver G. Harris,* TC Memo 1981-46, ¶ 81,046 P-H Memo TC; *Daniel W. Cole,* TC Memo 1981-48, ¶ 81,048 P-H Memo TC; *Bonnie J. Blaser,* TC Memo 1981-70, ¶ 81,070 P-H Memo TC; *Charles J. Gerlach,* TC Memo 1981-71, ¶ 81,071 P-H Memo TC; *Russell H. White,* TC Memo 1981-73, ¶ 81,073 P-H Memo TC; *Helen P. Gonsky,* TC Memo 1981-76, ¶ 81,076 P-H Memo TC; *Calvin L. Baumgartner,* TC Memo 1981-77, ¶ 81,077 P-H Memo TC; *Est. of Leon R. Liljequist,* TC Memo 1981-121, ¶ 81,121 P-H Memo TC; *Allan Lundgren,* TC Memo 1981-136, ¶ 81,136 P-H Memo TC; *Wilfred M. Raemer,* TC Memo 1981-138, ¶ 81,138 P-H Memo TC; *James L. Landphier,* TC Memo 1981-145, ¶ 81,145 P-H Memo TC; *Edward G. Bass, Jr.,* TC Memo 1981-146, ¶ 81,146 P-H Memo TC; *Donald F. Donovan,* TC Memo 1981-150, ¶ 81,150 P-H Memo TC; *James O. Jacobson,* TC Memo 1981-261, ¶ 81,261 P-H Memo TC; *Donald F. Shuman,* TC Memo 1981-264, ¶ 81,264 P-H Memo TC; *Walter W. York,* TC Memo 1981-265, ¶ 81,265 P-H Memo TC; *Alfred L. Wenger,* TC Memo 1981-266, ¶ 81,266 P-H Memo TC. *See also Wolf v. United States,* 47 AFTR2d 81-752 (DC Kan 1980). *See also* Rev Rul 75-257, Cum Bull 1975-2, 251-254.

[4] Following a common practice, the words *"v. Commmissioner,"* found in the title of all U.S. Tax Court cases, have been omitted.

[5] *See also* Briefs of Counsel, *United States v. Basye,* 35 L Ed2d 817.

members of the Craske family. The plaintiffs continued to live in the same home, sleep in the same bed and drive the same automobiles. Dr. Craske continued his medical practice in the same location, using the same equipment and being served by the same personnel. The trust sought only to effect a reduction in the amount of personal income taxes owed by plaintiffs. Where a trust has no valid purpose other than tax avoidance, it loses its economic reality. *Markosian, supra.* No business purpose was served here that was not satisfactorily served before the creation of the trust, except for the income tax aspect. The transfer of the residential real and personal property and deduction of the expenses and depreciation thereof had no basis whatsoever in the income tax law, federal or state. It would be unreasonable and unrealistic for the court to conclude that the grants to the trust and the trust itself had any economic substance.

A study of the evidence also leads to the conclusion that Mrs. Craske, a trustee with 50 percent of the beneficial units, was never an adverse party. No evidence was adduced to prove that the interests of the minor sons were adverse to the grantor. Additionally, the court finds that, although not technically provided for in the trust, the income and corpus of the trust were used to satisfy the support obligations of the grantor. It is inconceivable that people as intelligent as Dr. and Mrs. Craske proved to be at the trial would convey the right to their respective lifetime earnings to an adverse party. Therefore, the grantor would be treated as the owner of the trust under IRC §§ 671 through 677. (See Rev Rul 75-257, Cum Bull 1975-2, at 251.)

Based upon the study and analysis of the evidence presented in this case, this court affirms the tax principles reflected in the defendant department's Order No. I 80-41 and finds that the Craske Family Trust was and is a nullity for Oregon personal income tax purposes for the tax years 1977 and 1978.

The defendant, in its answer to the complaint herein, admitted that, in disregarding the existence of the trust for personal income tax purposes, it "disregarded the expenses related to the management fees." The defendant department shall review its billings and allow the normal business expense deductions proved by the taxpayers. Defendant's counsel shall

prepare a form of decree for the court.[6] The defendant is entitled to its costs and disbursements.

---

[6] In defendant's opinion and order, there is specific reference to the nondeductibility from gross personal income (under IRC § 212) of the costs of trust forms and related materials used to create a "family estate trust." No argument was offered to this court on this point, but if it is applicable here, the court agrees with the defendant that in all cases where the matter has been considered, the expense (usually $1,700 to $2,200) has been disallowed; e.g., *Louis P. Contini,* 76 TC 447 (1981), ¶ 76.36 P-H TC (1981); *John J. Sundheim,* TC Memo 1981-139, ¶ 81,139 P-H Memo TC; *William E. Gran,* TC Memo 1980-558 ¶ 80,558 P-H Memo TC; *William R. Corcoran,* TC Memo 1980-546, ¶ 80,546 P-H Memo TC; *Ronald E. Morgan,* TC Memo 1978-401, ¶ 78,401 P-H Memo TC; *James R. Johnston,* TC Memo 1978-121, ¶ 78,121 P-H Memo TC.