# IN THE OREGON TAX COURT

COLE et al

*v.*

# STATE OF OREGON by and through the OREGON DEPARTMENT OF REVENUE

(TC 1435)

Barbara J. Rose, Lake Oswego, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered September 27, 1982.

**CARLISLE B. ROBERTS, Judge.**

Plaintiffs, husband and wife, appealed from the defendant's Order No. I 80-38, dated August 11, 1980. The defendant's order concluded that the Coles' "Declaration of Trust," establishing the "Daniel W. Cole Estate," was ineffective to transfer Mr. Cole's income to the trust for the tax years 1976 and 1977 and that such income should have been reported upon Oregon individual income tax returns by the Coles for the pertinent years. Accordingly, the defendant's auditor adjusted the individual and fiduciary returns to tax the income to the individuals. Deductions were allowed (and disallowed) as appropriate under ORS chapter 316. The sole question presented to the court is whether the defendant's administrative order was correct as a matter of law, pursuant to the pertinent sections of ORS chapters 305, 314 and 316.

The court has ruled on a similar case, the Craske

Family Trust, in *Craske v. Dept. of Rev.*, 9 OTR 92 (1981).[1] In that case, the Craske Family Trust (created on forms provided by the Institute of Individual Religious Studies) was held to be a nullity for Oregon personal income tax purposes. No appeal was taken to the Oregon Supreme Court from that decision. This court now has more than 20 complaints on file, appealing from orders of the defendant, denying to the taxpayers the tax advantages sought by them under the same type of trust. It appears useful, therefore, to set out the legal position in detail for the information of all persons concerned.

The plaintiffs herein, Mr. and Mrs. Daniel W. Cole, unsuccessfully appealed their personal federal income tax deficiency for the tax year 1975 to the U.S. Tax Court (¶ 81,048 P-H Memo TC, 41 TCM 810 (1981)).[2] The issues presented were (as in this suit):

"1. Whether the purported conveyance by petitioner Daniel W. Cole of his lifetime services to a family trust effectively shifted the incidence of taxation on compensation paid to him but transferred to the trust.

"2. Whether income reported by the trust is taxable to petitioners under sections 671 through 677 [Internal Revenue Code of 1954].

"3. Whether petitioners are entitled to deduct the expenses of setting up the trust under section 212 [Internal Revenue Code of 1954]."

■　　At the outset, referring to a point stressed by the plaintiffs, it is recognized that efforts to minimize taxes are

---

[1] The *Craske* decision was not appealed to the Oregon Supreme Court. It was designated for publication in the Oregon Tax Reports Advance Sheets but, as of the date of this opinion, has not appeared, because of suspension of publication due to budget limitations. It can be found in P-H State and Local Taxes, § 58-460 (with some citations deleted), and is abstracted in CCH State Tax Reporter—Oregon, § 203-379. Copies will be sent on request and payment to the Clerk of the Oregon Tax Court, 520 Justice Building, Salem, Oregon 97310.

[2] This court is aware of the decision of the United States Tax Court in *Daniel W. Cole*, ¶ 81,048 P-H Memo TC, 41 TCM 820 (1981), but, in accordance with the precedents (see 29 Am Jur2d *Evidence* § 58, n 6 and 7), it has not taken judicial notice thereof, relying entirely upon the record of facts proved in this court. However, it has relied upon the case law developed in the U.S. Tax Court and federal courts of appeal, inasmuch as the federal statutes construed therein have been adopted by reference into ORS chapter 316 and are pertinent in this case.

neither illegal nor unethical. The classic statement on the subject was made by Judge Learned Hand:

"* * * Over and over again courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions. To demand more in the name of morals is mere cant." *(Commissioner v. Newman,* 159 F2d 848, 850-851 (2d Cir 1947), 35 AFTR 857.)

The Daniel W. Cole Estate was set up on forms sold by the "National Pure Trust Service" of the Educational Scientific Publishers (A Trust). The form uses the description "express equity pure trust." Similar forms are sold by the Institute of Individual Religious Studies (and used by Dr. Craske, *supra).* It appears that these forms are widely marketed throughout the United States. The trust describes itself as an "irrevocable, inter vivos, complex trust" and the forms are sold to the purchasers for the purposes of reducing or avoiding income taxes, inheritance taxes and the costs of probate of decedents' estates.[3]

The Cole Trust was created in 1975 while the Coles were residing in California. The trust follows the usual pattern of the "equitable family trust": The wife conveys all of her real and personal property to the husband, together with a pledge of all of her personal services for the rest of her life.[4] The husband then conveys these assets, together with all of his own, including his future personal services, to the trust which he has created. He receives in return "certificates of beneficial interest" (printed forms provided by the publishers of the trust forms) which are described in the trust instrument:

"* * * They are non-assessable, non-taxable (under the

---

[3] Richardson, *The Family Estate Trusts: Tax Myths and Realities,* 1978 Brigham Young U L Rev, No. 3, 705-721.

[4] Apparently, beginning in 1976, the Coles concluded that a pledge for life was not acceptable. By Minute 25B they approved Defendant's Exhibit D, an instrument providing for the transfer to the Trust of the Coles' individual services for one year, a transfer which was renewed annually. The court is unable to discern that this de facto amendment rendered the Trust any more acceptable as an instrument to manipulate the impact of personal income taxes. The new contract is an assignment of future income.

provisions of Section 1002 of Internal Revenue Code), non-negotiable but tranferable; and the lawful possessor thereof shall be construed the true and lawful owner thereof. * * *

"* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property nor any undivided interest therein, nor in the management thereof; nor shall the death of a holder entitle his heirs or legal representatives to demand any partition or division of the property of The Trust, nor any special accounting; but said successor may succeed to the same distributional interest upon the surrender of the certificate as held by the deceased for the purpose of reissue to the then lawful holder or owner."

The printed declaration of trust provides that "Trustees shall be not less than two in number, but may be increased for practical reasons beneficial to The Trust. The Trustees herein mentioned by name or their successors elected to fill vacancies, shall hold office, have and exercise collectively the exclusive management and control of The Trust property and business affairs; * * *."

Typically there are three trustees, often including the grantor, and always including the grantor's wife and some other close relative or close friend.

Daniel W. Cole, as founder-grantor, received certificate No. 1, representing 100 units of beneficial interest, on April 10, 1975. He then issued 50 units on that same day to his wife, Carolyn Cole, retaining 50 units for himself. On the next day he gave 20 units to his son, Daniel W. Cole, Jr., and 20 to Louise G. O'Keefe, his mother-in-law. (On January 2, 1978, the 10 shares retained by Daniel W. Cole were transferred to his new son, Jonathan.) All these certificates were signed by the three trustees: Daniel W. Cole, Carolyn Cole and Louise G. O'Keefe. (Def Ex C.) The plaintiffs, Mr. and Mrs. Cole, were appointed by the trustees as executive manager and executive secretary, respectively. They received "consultant fees" for their services and reported those for income tax purposes. Mrs. Louise O'Keefe received no fees during 1976 and 1977.

Mr. Cole testified that the purpose of the trust was to take care of the family. The plaintiffs recognize the trust as a separate legal entity but show confusion with respect to

separating their uses of the property of the trust from the legal entity. They own a tract of forest land on which they have built a house which was deeded to the trust but which they use as a personal residence without paying rent. They did not transfer title to their motor vehicles to the trust but the trust pays for the maintenance of the motor vehicles. All personal property (apart from motor vehicles), including household furniture, kitchen ware and personal items, was transferred to the trust but used by the family in exactly the same manner as prior to the transfer.[5]

The Department of Revenue, in its Opinion and Order No. I 80-38 states:

"The auditor was of the opinion that the trust arrangement was ineffective to transfer the trustor's income to the trust and adjusted the individual and fiduciary returns to tax the income to the individuals. Deductions were allowed and disallowed where appropriate.

"I [Robyn L. Godwin, Director, Oregon Department of Revenue] find the trust arrangement in this case to be indistinguishable from other so-called 'family estate trust' arrangements which have uniformly been held ineffective to shift the trustor's personal income tax burden to the trust. The income must be taxed to the trustor because he is the true earner of the income, or because the trustor retained sufficient control over the trust to be deemed its owner under the 'grantor trust rules' IRC § 671-677. * * *"

At the time of trial, counsel for the defendant, Ted E. Barbera, Assistant Attorney General, Oregon Department of Justice, filed a trial memorandum which the court adopts (with slight editing) as its own, as follows:

In an effort to shift their personal income tax burden,

---

[5] Both Mr. and Mrs. Cole gave lip service to their alleged fiduciary requirements as trustees. Mr. Cole testified that if he did a wrongful act, he could be sued by someone (apparently overlooking or not accepting the provision in the Declaration of Trust (Def Ex A, at 6) "* * * that The Trustees, are NOT personally liable when dealing with The Trust properties or matters"). Mrs. Cole testified that the husband and wife could not use trust property for personal uses but readily admitted that all the personal property in the "trust headquarters" was used by the family in the normal way and the headquarters constituted their personal residence. In the court's view, the "legalistic" framework the taxpayers have adopted was foreign to their mode of thought and their understanding and they were not well advised.

many taxpayers have created so-called "pure trusts," "equity trusts," or "constitutional trusts," which may be referred to collectively as "family estate trusts."

The trust arrangements are basically the same. The grantor conveys his property and lifetime services to the trust in exchange for certificates of beneficial interest which he may then transfer to others. Thereafter, theoretically, the grantor's personal income will be limited primarily to a "management consultant fee" paid him by the trust. The grantor's other earnings will be turned over to the trust by the grantor or his employer and shown as income to the trust on its fiduciary income tax return. The fiduciary return will also show deductions for such things as real estate taxes, depreciation and mortgage interest on the grantor's personal residence, management fees paid to the grantor and amounts paid on behalf of the grantor and his family for utilities, medical and dental care, entertainment, transportation and similar expenses. The end result is a substantial reduction in the grantor's income tax burden.

In a steadily growing number of cases,[6] the federal Internal Revenue Service has successfully contended in the U.S. Tax Court and the federal courts of appeal that such family estate trust arrangements are ineffective as a means of shifting the trustor's personal income burden upon one or more of the following grounds:

(1) Income must be taxed to the one who earns it and a conveyance of one's lifetime services and earned

---

[6] In addition to the 40 decisions cited in *Craske,* more recent decisions cited by defendant and followed by this court include *Agnes L. Hicks,* ¶ 82,200 P-H Memo TC, 43 TCM 1081 (1982); *Thomas N. Crowley,* ¶ 82,211 P-H Memo TC, 43 TCM 1137 (1982); *Allen Family Trust,* 588 F Supp 152 (DC Kan 1982), 49 AFTR2d 82-1407, 82-1 USTC § 9322; *Walter Hugh Ferguson,* ¶ 82,251 P-H Memo TC, 43 TCM 1317 (1982) (wife of insurance salesman not an adverse party); *Robert N. Brown,* ¶ 82,253 P-H Memo TC, 43 TCM 1322 (1982) (cost of trust package not a deductible theft loss); *Estate of Clarence E. Snyder,* ¶ 82,258 P-H Memo TC, 43 TCM 1337 (1982) (adult children of real estate salesman not adverse parties); and *Susan H. Epp,* 78 TC 3166, ¶ 78.55 P-H TC (1982) (cost of trust materials not deductible). Following the trial of the present case, this court has noted *La Verne Schulz v. Comm.,* 686 F2d 490 (7th Cir, 1982), 50 AFTR2d 82-5562. (The cited cases show that the cost of the trust packets run from $1,700 to $10,000. Consequently, the deduction is not "passed" by the tax auditor as de minimis.)

remuneration thereform constitutes an anticipatory assignment of income, or

(2)   The grantor must be considered the owner of the trust under the grantor's trust rules, §§ 671 through 677 of the Internal Revenue Code, or

(3)   The trust is devoid of economic reality and must be treated as a nullity for income tax purposes.

### Anticipatory Assignment of Income

■      It has long been established that income must be taxed to the one who earns it and that contractual arrangements designed to deflect income away from the one who earns it are ineffective as a means of avoiding tax liability. This doctrine was first announced in *Lucas v. Earl,* 281 US 111, 50 S Ct 241, 74 L Ed 731, 8 AFTR 10287, 2 USTC ¶ 496 (1930), where the taxpayer had entered into a contract with his wife, providing that all salaries, fees and other property thereafter acquired by either of them was to be received and owned by them as joint tenants. Nevertheless, the U.S. Supreme Court (Holmes, J.) held that all of the taxpayer's salary and fees were attributable to him for tax purposes:

"* * * There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew." *Lucas v. Earl, supra,* at 281 US 114-115.

The idea that income is taxed to the one who earns it has come to be regarded as a fundamental principle of income taxation. *Commissioner v. Culbertson,* 337 US 733, 739-740, 69 S Ct 1210, 93 L Ed 1659, 1663, 37 AFTR 1391, 49-1 USTC ¶ 9323 (1949).

More recently, the principle of *Lucas v. Earl* was reaffirmed by the U.S. Supreme Court in *U.S. v. Basye et al,* 410 US 441, 93 S Ct 1080, 35 L Ed2d 412, 31 AFTR2d 73-802, 73-1 USTC ¶ 9250 (1973). Basye was a member of a medical

partnership which entered into an agreement to supply medical services to members of a health foundation. The agreement provided that a portion of the partners' compensation was to be paid by the foundation into a retirement trust for the benefit of the partners. The court held that the retirement fund payments, notwithstanding the fact that they were contributed directly to the trust, were compensation for services that the partners rendered under the medical service agreement and should have been reported as income to them. The court said at 410 US 449-450:

> "* * * The entity earning the income—whether a partnership or an individual taxpayer—cannot avoid taxation by entering into a contractual arrangement whereby that income is diverted to some other person or entity. Such arrangements, known to the tax law as 'anticipatory assignments of income,' have frequently been held ineffective as means of avoiding tax liability. * * *"

■ Consequently, in Rev Rul 75-257 (Cum Bull 1975-2, 251), the Internal Revenue Service took the position that the assignment to a family estate trust of the grantor's lifetime services, including all remuneration earned by him regardless of its source, constituted an anticipatory assignment of income and was ineffective to shift his tax burden to the trust.

The IRS position has been upheld in a number of cases involving family estate trusts. *George T. Horvat,*[7] ¶ 77,104 P-H Memo TC, 36 TCM 476 (1977), *aff'd* 582 F2d 1282 (7th Cir 1978) (unpublished order), *cert denied* 440 US 959, *rehearing denied* 441 US 956 (1979); *Richard L. Wesenberg,* 69 TC 1005 (1978); *Wallace J. Vnuk,* ¶ 79,164 P-H Memo TC, 38 TCM 710 (1979), *aff'd* 621 F2d 1318 (8th Cir 1980), 46 AFTR2d 80-5296, 80-2 USTC ¶ 9575; and *Raymond A. Vercio,* 73 TC 3073 (1980).

The assignment of the grantor's lifetime services and income is usually contained in a recorded affidavit or in the language of the trust instrument itself, wherein the trustees accept real and personal property conveyed by the grantor to the trust, including "* * * the exclusive use of his lifetime

---

[7] See footnotes 3 and 6 in this court's opinion in *Craske.*

services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM * * * ."

In some cases, the same result is accomplished by means of an "employment contract" between the trust and the grantor. These agreements purport to give the trust the "actual legal right to control, direct, and manage" the grantor's services with respect to all activities or efforts (for the rest of his life) that would and will result in earnings, and to impose upon the grantor the "legal duty" to work when and where the trust directs and to earn money or benefits for the trust. The agreements declare that the trust, not the grantor, is the "true earner" of all such moneys and that it is the duty of the grantor, as a mere nominee, immediately to pass through to the trust any and all earnings.

The trust may also agree to supply the grantor's services to an employer, who then is asked to compensate the trust directly for the grantor's services. (The cases cited above show that employers often refuse this request.)

Taxpayers contend that, by virtue of the trust instrument or employment agreements or both, they are merely agents or employees of the trust and earn money for the trust by performing services for third parties. Therefore, they argue, their earnings are properly includable in the trust gross income.

In support of their position, taxpayers frequently rely upon "loaned employee" cases such as *Fontaine Fox,* 37 BTA 271 (1938), and *Charles Laughton,* 40 BTA 101 (1939), *remanded* 113 F2d 103 (9th Cir 1940), and *Rubin v. Commissioner,* 51 TC 251 (1968), *remanded* 429 F2d 650 (2d Cir 1970), 70-2 USTC ¶ 9494.

■        In *Wallace J. Vnuk, supra,* the U.S. Court of Appeals found these "employee lend-out" cases to be readily distinguishable and no support for the taxpayer's position.

"Here, it is clear that the 'ultimate direction and control' rested in the taxpayer and not in the Trust. While the taxpayer may have conveyed, at least in form, his services to the Trust, he was not in substance a bona fide servant of the Trust. The Trust had no right to supervise the taxpayer's employment or determine his remuneration, and the taxpayer

had no legal duty to earn money or perform services for the Trust. In such circumstances, the conveyance merely constituted an anticipatory assignment of income and was insufficient to shift the incidence of taxation from the petitioners to the Trust." 621 F2d, at 1320-1321. *See also, Daniel W. Cole* [the plaintiff in the present suit], ¶ 81,048 P-H Memo TC, 41 TCM 820 (1981), and *Alan H. Nittler,* ¶ 79,440 P-H Memo TC, 39 TCM 422 (1979).

The true test as to whether there has been an assignment of income is who *in fact* controls the earning of the income. *American Savings Bank v. Commissioner,* 56 TC 828 (1971). If the grantor, *in fact,* earns the income, it is taxable to him, regardless of the language of any agreement with the trust.

For example, in *Ronald E. Morgan,* ¶ 78,401 P-H Memo TC, 37 TCM 1661 (1978), and *Richard L. Wesenberg, supra,* the court pointed out that even if the trust instruments had given the trust the right to direct the grantor's activities and had imposed duties upon the grantor to earn money or perform services for the trust, it is questionable whether the trust could obligate the grantor to perform services which were inherently personal to him in nature.

In expressing doubts as to the enforceability of such contracts, the courts apparently had in mind the familiar and long-established doctrine that courts of equity will not decree specific performance of contracts for personal services, involving the exercise of special skills, judgment and discretion, especially where the contracts are continuous in nature and run for a number of years or an indefinite period of time. *Deitz v. Stephenson,* 51 Or 596, 606, 95 P 803 (1908); Annot., 22 ALR2d 508, 539 (1952); 71 Am Jur2d *Specific Performance* § 163.

The "loaned employee" cases have no application in the family estate trust context. The grantor is not a bona fide employee of the trust. He is the true earner of the income and it must be taxed to him under laws like ORS chapter 316, imposing taxes on net income.

## Grantor's Trust
In the alternative, the state contends that the grantor must be considered the owner of the trust under the "grantor

trust rules" of IRC §§ 671 through 677 and, therefore, the income and expense items reported by the trust are properly reportable by the plaintiffs.

■ The grantor trust rules provide that where the grantor of the trust retains certain powers described in IRC §§ 673-677, then, for income tax purposes, he is treated as the "owner" of that portion of the trust over which the proscribed powers extend.[8] When the grantor is treated as the owner of the trust, IRC § 671 includes in his income "those items of income, deductions, and credits * * * of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account * * * in computing taxable income or credits * * * of an individual."

■ In determining whether a particular power retained by the grantor is within the group of powers proscribed by the federal Internal Revenue Code, it is necessary first to determine if the power is exercisable by the grantor with or without the consent of an "adverse party." IRC § 672(a) defines "adverse party" to mean "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust." The question whether a particular interest is adverse or nonadverse is essentially a question of fact which must be determined by considering in each case the particular interest created by the trust instrument and the relative size of that interest. *Paxton v. Commissioner*, 57 TC 627, 631 (1972).

The typical family estate trust instrument designates at least two trustees. These are generally the grantor's spouse and another family member or close friend. The trustees have the power to appoint additional trustees and, once the trust is formed, they generally appoint the grantor to be a trustee. The friend-trustee often resigns, leaving the grantor and his or her spouse as the sole trustees.

The powers of the trustees are so broad as to be deemed unlimited. A majority of the board of trustees "* * * may do anything any individual may legally do in any state or

---

[8] By reference, IRC §§ 671-677 have been made part of Oregon's personal income tax statutes; *see* ORS 316.007 and 316.012.

country. * * * A Minute of Resolutions of The Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. * * *" The trustees may also supplement the trust instrument by resolutions "covering contingencies as they arise. * * *"

Thus, the grantor and one other trustee, as a majority of the Board of Trustees, may effectively control the trust if the other trustee is not an "adverse party."

■ A trustee is not an adverse party merely because of his interest as trustee. IRC Reg § 1.672(a)-1(a). Therefore, one who is only a trustee would not qualify as an adverse party.

Similarly, one who is only a beneficiary would not qualify as an adverse party because the trust instrument does not require the beneficiary's consent or approval prior to the exercise of any powers of the trustees. *Richard L. Wesenberg,* 69 TC 2572, 2578 (1978).

■ The remaining question is whether a trustee, who also holds certificates of beneficial interest, may be considered an adverse party. The certificate of beneficial interest conveys no interest of any kind in the trust assets: "Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor any undivided interest therein, nor in the management thereof. * * *" Consequently, a trustee-beneficiary cannot be considered an adverse party as a beneficiary because his or her certificate creates no direct beneficial interest in the trust.

The U.S. Tax Court agreed with this contention in *Wallace J. Vnuk,* ¶ 79,164 P-H Memo TC, 38 TCM 710 (1979), wherein the grantor and his wife held all of the units of beneficial ownership. Among other things, the court held that none of the grantor's powers as trustee required the consent of an adverse party, even though his wife was a trustee beneficiary.

Moreover, even though a trustee may have a direct beneficial interest in the trust assets, he will not be an adverse party if his interest will not be adversely affected by the exercise or nonexercise of the power he possesses with respect to the trust.

For example, IRC § 677 provides in part:

"(a) General Rule.—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be —

"(1) distributed to the grantor or the grantor's spouse;

"(2) held or accumulated for future distribution to the grantor or the grantor's spouse * * *."

In *Raymond A. Vercio,* 73 TC 3073 (1980), the trustor, his wife and their two children were trustees of a family trust. The trust instrument, typically, provided that any action must have the consent of the majority of trustees. Although the taxpayers agreed that the trustor had the discretion to distribute income currently to himself or his spouse, or to accumulate the income for future distribution to himself or his spouse, the taxpayers argued that IRC § 677 did not apply because the powers were exercisable only with the consent of at least two of the other three trustees, "all of whom were adverse parties."

■ The court pointed out that IRC § 672 provides that before a party may be considered as adverse, the party must have a substantial beneficial interest in the trust and that interest must be adversely affected by the exercise or nonexercise of the power that the party possesses.

The taxpayers argued that since the wife held 75 of the 100 units of beneficial interest, her interest in the trust was substantial and it followed that she was an adverse party. The court responded that the taxpayers' argument missed the point because, even assuming that the wife's interest was substantial, the taxpayers had given no consideration to how her interest would be affected by the trustor's exercise or nonexercise of the power proscribed in IRC § 677. The court could find no motivation on the part of the wife to prevent income from being distributed or held for her benefit and, therefore, concluded that she was not an adverse party to a distribution to the grantor's spouse under IRC § 677.

Even if the grantor's spouse does have an adverse

interest, this is of no consequence where the spouses file joint returns. *Laganas et al v. Commissioner,* 281 F2d 731 (1st Cir 1960), 6 AFTR2d 5388, 60-2 USTC ¶ 9657.

It is clear that the case decisions hold that, although a spouse-trustee may hold certificates of beneficial interest in a family estate trust, he or she is not an "adverse party" whose consent or approval is required as a pre-condition to the exercise of the powers vested in the grantor and his or her co-trustees.

It must next be determined whether the powers held by the grantor are within those proscribed by the Internal Revenue Code and, if so, over what portion of the trust he should be deemed owner.

IRC § 674(a) provides that the grantor shall be treated as the "owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party."

In *Richard L. Wesenberg, supra,* the petitioners (husband and wife), as a majority of the trustees, had the authority to adopt resolutions affecting the administration of the trust "covering contingencies as they arise." The trust further provided: "Resolutions of the board of trustees authorizing a special thing to be done shall be evidence that such act is within its power." The court held that when this grant of authority was viewed in the light of its apparent interpretation by the trustees, together with the fact that the petitioners presented no evidence to show that the power was in any way restricted, the grantor, in conjunction with two nonadverse parties, could control and dispose of the beneficial interest of the entire trust corpus and income.

The court also noted that the grantor used this control for his own benefit, pointing out that a resolution was adopted• by the trustees whereby the petitioners were "employed" as managers of the trust which supplied them with a rent-free residence maintained by the trust and a monthly consultant fee which was determined solely by the petitioners. In addition, the petitioners caused the trust to pay

for their health care, beauty and barbership expenses, vacation expenses and any other personal expenses of the petitioners which they agreed were in the "best interest" of the trust.

Based on these facts and because the beneficiaries were entitled to receive nothing unless the trustees in their sole discretion determined otherwise, the court held that the grantor possessed sufficient control over the disposition of the corpus and income of the trust to cause him to be treated as the "owner" under IRC § 674(a) for purposes of IRC § 671. The court then concluded that all of the items of income and expenses reported by the trust were includable in the petitioners' return.

The court also believed that its decision was compelled by IRC § 676 or § 677.

IRC § 676(a) treats the grantor as the "owner" of any portion of a trust "where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a nonadverse party, or both." The court was of the opinion that the manner of the exercise of the trustee's power to adopt resolutions to cover contingencies was tantamount to a power of revocation and, therefore, the grantor should be treated as the "owner" of the entire trust under IRC § 676(a).

IRC § 677(a) generally provides that the grantor shall be treated as the owner of any portion of a trust whose income, without the approval or consent of any adverse party is, or in the discretion of the grantor or nonadverse party, or both, may be distributed to or accumulated for future distribution to the grantor or the grantor's spouse.

The court concluded that, while the trust instrument did not specifically provide for the distribution of income to the petitioners, under the "contingency" power the trustees had the authority to discharge the grantor's obligations of medical care, life insurance and housing. Since there were no restrictions in the trust on the use of its income or corpus to satisfy these obligations, the court concluded that the grantor should be treated as an "owner" of the entire trust under IRC § 677(a). *See also, Raymond A. Vercio, supra.*

## *Absence of Economic Reality*

In *Louis Markosian,* 73 TC 1235 (1980), a dentist and his wife transferred all of their business and personal assets, including dental equipment, lifetime services and all remuneration therefrom, to a family trust under which they were the only trustees. The property was conveyed in exchange for 100 units of beneficial ownership which were held by the taxpayers and their children. Louis also entered into an agreement with the trust whereby the trust agreed to provide office space, equipment, furnishings and salaried personnel for his dental practice in return for 80 percent of the gross income from the dental practice.

The United States Tax Court observed that, while a taxpayer has the legal right to minimize his taxes or avoid them by any means which the law permits, this does not include the right to structure a paper entity to avoid tax when the entity does not stand upon a solid foundation of economic reality. When the form of the transaction has not in fact altered any cognizable economic relationships, the court will look through the form and apply the tax law according to the substance of the transaction. The court then held that there was no economic reality or substance to the transaction because:

"First, the relationship of the grantors to the property transferred did not differ in any material aspect before and after the creation of the trust. Petitioners conducted their business and lived their private lives exactly the same as before the trust was created. Louis continued his dental practice in the same office, using the same equipment that he used before. Petitioners lived in the same house with the same furnishings it had before. The only difference was that petitioners, as trustees, rather than individually, paid most of the expenses involved in those activities. However, the funds used to pay these expenses came from Louis' dental practice.

"Second, petitioners, as equal grantors, were also cotrustees with no person independent of their wishes empowered to prevent them from acting in derogation of the interest of the other beneficiaries. [Citations and footnotes omitted.]

"Third, we cannot perceive of any economic interest which passed to the other beneficiaries under this trust arrangement. As trustees, petitioners were invested with

broad powers to amend the trust by resolution 'covering contingencies as they arise.' * * *

"Fourth, petitioners did not feel bound by any restrictions imposed by this trust or the law of trusts. * * *"

The court concluded that these "factors, together with the lack of any valid purpose other than the avoidance of tax," (73 TC, at 1244) were sufficient to sustain the government's disregard of the trust for personal income tax purposes.

This court finds that facts in the present suit raise some or all of the issues considered above and, pursuant to law, the issues must be decided in the same way. This is in conformity with the Oregon Tax Court's decision in *Craske,* (cited on page two of this opinion) and the numerous United States Tax Court opinions cited therein.[9]

---

[9] The complaints in this case and in the companion cases (Oregon Tax Court No. 1427, *Williams,* and No. 1463, *Gates,* all signed by the same counsel) should never have been filed.

The court acknowledges the conflicts to be resolved by ethical counsel in meeting the dilemmas imposed by the Code of Professional Responsibility: "A lawyer should represent a client zealously" but "within the bounds of the law." (Canon 7.) When a client insists on going to court, the lawyer, as counselor and adviser, "should give his professional opinion as to what the ultimate decisions of the courts would likely be as to the applicable law." EC 7-3. The next two sections of Ethical Considerations (headed "Duty of the Lawyer to a Client") read as follows:

"EC 7-4. The advocate may urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail. His conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous.

"EC 7-5. A lawyer as adviser furthers the interest of his client by giving his professional opinion as to what he believes would likely be the ultimate decision of the courts on the matter at hand and by informing his client of the practical effect of such decision. He may continue in the representation of his client even though his client has elected to pursue a course of conduct contrary to the advice of the lawyer so long as he does not thereby knowingly assist the client to engage in illegal conduct or to take a frivolous legal position. * * *." (Citations omitted.)

The "equitable family trust" is relatively new to Oregon courts but it has a long history in the federal courts throughout the United States wherein taxpayers have lost scores of decisions and won none. The pertinent federal and Oregon income tax laws are identical (having been incorporated by reference by Oregon) and the federal decisions are *stare decisis* in Oregon.

In the court's view, plaintiffs' counsel filed frivolous complaints in these cases, unnecessarily causing the expenditure of substantial time and money by her clients, herself, the Department of Revenue, the Department of Justice and this court.

At the conclusion of this trial (and the companion suits, Tax Court No. 1427, *Williams,* and No. 1463, *Gates),* plaintiffs' counsel received permission from the court to file a post-trial brief. (Identical briefs were filed in each suit.) The court has read each of the cases cited therein and weighed the arguments of plaintiffs' counsel. The court does not concur with counsel that there is an intent to destroy the trust; defendant's arguments (and its citations) hold that the trust is ineffectual as an income tax shelter. Plaintiffs' citations tend to support defendant's arguments more than they do plaintiffs'. Plaintiffs' arguments are not persuasive. In the equitable family trust, the court can find no *raison d'etre* except tax avoidance without legislative sanction.

The defendant's Order No. I 80-38, dated August 11, 1980, is affirmed; the plaintiffs' appeal is dismissed; the defendant is awarded its costs and disbursements.

Defendant shall prepare and deliver to the court a form of decree, pursuant to the court's Rule 68.