[No. 26593. *En Banc.* June 28, 1937.]

THE STATE OF WASHINGTON, *on the Relation of Earl A. Carr, Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Clay Allen, Judge, Respondent.*[1]

[1]Reported in 69 P. (2d) 1052.

554

*Herman E. Brown,* for relator.

*Shorett, Shorett & Taylor* and *Roy B. Trelstad,* for respondent.

ROBINSON, J.—On February 8th, 1937, Earl A. Carr verified and filed a complaint against George M. Walker, Chester Richards, and W. W. Wyatt, acting as commissioners of water district No. 52 of King county, to enjoin the defendants from performing any act as such commissioners, contending that the district had not been legally organized and had no legal existence. Plaintiff prayed, in the alternative, that an election held by the district on December 7th, 1935, at which a comprehensive scheme was adopted and the issuance of general obligation bonds authorized, be declared null and void, for the reason that notice of the election had not been timely given.

The contest thus begun was carried on and concluded in the lower court within the space of a single day. On the same day the complaint was verified and filed, the commissioners of King county corrected their records pertaining to the formation of the district, these corrections and other affirmative matter were set up in defendants' answer and admitted by plaintiff's reply, and a trial was had before nightfall. The decision was embodied in a formal decree entered on

February 10th, in which it was adjudged that the district had been legally created; that the district election of December 7th, 1935, was valid and the water district duly authorized to issue its general obligation bonds in the amount of $3,400.

██ The cause came to this court by writ of certiorari, there being no remedy by appeal. *Adams County v. Scott*, 117 Wash. 85, 200 Pac. 1112.

Chapter 114, Laws of 1929, p. 218, relating to the formation of water districts, provides, in substance, that a petition shall be signed by at least twenty-five per cent of the electors residing within the proposed district and filed with the county auditor. If the petition be found to contain a sufficient number of qualified signatures, the auditor shall so certify to the county commissioners, who shall give notice of a hearing as therein prescribed, and, as provided in § 2 of the act, p. 219,

". . . upon a final hearing said board of county commissioners shall make such changes in the proposed boundary lines as they deem to be proper and shall establish and define such boundary and shall find whether the proposed water district will be conducive to the public health, welfare and convenience *and be of benefit to the majority of the land included within the said boundaries of said proposed district* so established by the said board of county commissioners; . . ." (Italics ours.)

Section 3 of the act, p. 220, provides, in part, as follows:

"Upon entry of the findings of the final hearing of the said petition by the said county commissioners of such county, if they find said proposed water system will be conducive to the public health, welfare and convenience *and be of special benefit to the majority of the land included within the boundaries of the said proposed district,* shall by resolution call a special election . . ." (Italics ours.)

The resolution of the board of county commissioners of King county, calling a special election to determine whether the water district should be created, was passed on April 15th, 1935, and reads, in part, as follows:

"WHEREAS, a petition signed by residents of the within described territory for the creation and establishment of a water district, under and pursuant to Chapter 114, Laws of 1929, was filed with the Board of County Commissioners on the 18th day of March, 1935, requesting that the Board of County Commissioners shall call a special election for the creation or rejection of water districts, and . . .

"WHEREAS, at said hearing the Board of County Commissioners find that the said proposed water district will be conducive to the public health, welfare and convenience and be of benefit to the majority of the land included within the boundaries of the proposed water district as hereinafter described, now, therefore,

"BE IT RESOLVED by the Board of County Commissioners of King County, Washington:

"1. That a special election be held on the 8th day of June, 1935, . . ."

The resolution shows a strict compliance with chapter 114, Laws of 1929, p. 218. It contains a finding in the exact language of that act that a majority of the land would be benefited. Unfortunately, however, the act had been amended by chapter 72, Laws of 1931, p. 223. That portion of § 2 of the act of 1929, p. 219, hereinbefore quoted, had been amended to read as follows:

". . . and upon a final hearing said board of county commissioners shall make such changes in the proposed boundary lines as they deem to be proper and shall establish and define such boundaries and shall find whether the proposed water district will be conducive to the public health, welfare and convenience *and be of special benefit to the land included within*

*the said boundaries of said proposed district* so established by the said board of county commissioners: *Provided, That no lands which will not, in the judgment of said board, be benefited by inclusion therein, shall be included within the boundaries of said district as so established and defined: . . ."* (Italics ours.) (Rem. Rev. Stat., § 11580 [P. C. § 7249-12].)

Section 3 of chapter 114, Laws of 1929, p. 220, had been amended to read as follows:

"Sec. 4. That section 3 of chapter 114 of the Laws of 1929 be amended to read as follows:

"Section 3. Upon entry of the findings of the final hearing of the said petition by the said county commissioners of such county, if they find said proposed water system will be conducive to the public health, welfare and convenience *and be of special benefit to the land included within the boundaries of the said proposed district,* shall by resolution call a special election . . ." (Italics ours.) (Rem. Rev. Stat., § 11581 [P. C. § 7249-13].)

The wording of the resolution of the King county commissioners adopted April 15th, 1935, exactly following the language of the 1929 statute, raises a strong inference that the commissioners did not know of the 1931 amendments to that statute when they held the hearing, or, at least, that they did not then have them in mind. Upon the filing of the complaint in this action, the commissioners took immediate steps to correct the record. We quote a portion of exhibit "A" attached to defendants' answer:

"RESOLUTION No.............
"Nunc pro tunc
"BE IT RESOLVED by the Board of County Commissioners, that all of the property included within Water District No. 52 as organized, pursuant to Resolution No. 5588, passed on the 15th day of April 1935 by the Board of County Commissioners of King County, Washington, is, in fact, specially benefited by the or-

ganization of the district and the improvements to be made; and this finding shall be deemed made as of the 15th day of April 1935, the date upon which said Resolution No. 5588 was passed by said Board of County Commissioners.

"PASSED this 8th day of February 1937.

"LOUIS NASH
"JACK TAYLOR
"BOARD OF COUNTY COMMISSIONERS KING COUNTY, WASHINGTON."

"AFFIDAVIT

"RE: WATER DISTRICT NO. 52—KING COUNTY

"STATE OF WASHINGTON ⎱
"COUNTY OF KING ⎰ SS:

"LOUIS NASH AND JACK TAYLOR, being first duly sworn, on oath depose and say, each for himself: That on the 15th day of April 1935, they were duly elected, qualified and acting County Commissioners of King County, Washington. That on said day a hearing was had on a petition for the organization of a water district, which was organized pursuant to Resolution No. 5588, passed by the Board of County Commissioners of King County on said date, as Water District No. 52, King County, Washington; and, further, that before the passage of said Resolution the Board of County Commissioners, at said meeting,' duly assembled, did consider the question of special benefit to all of the property included within said district, and did, in fact, determine and find that the creation of the District and the making of the improvements therein would be of special benefit to all of the land included within the District as set forth in said Resolution No. 5588, but that, through inadvertence, in the preparation of the written resolution, said finding in regard to special benefits was omitted therefrom.

"LOUIS NASH
"JACK TAYLOR

"SUBSCRIBED and sworn to before me this 8th day of February 1937.

"ROY ERFORD
"Notary Public in and for the State of Washington, residing at Seattle."

It is probably true, as respondents contend, that a board of county commissioners has the same power to correct its records to make them speak the truth that a court has; but the power to alter official records is a very dangerous one, and alterations made in the exercise thereof should not be recognized and given effect unless supported by clear and convincing evidence. It may well be questioned—and probably would have been questioned below if this matter had not been rushed through the trial court at so furious a pace—whether or not this *ex parte* affidavit, made apparently wholly from memory nearly twenty-two months after the hearing, is sufficient to justify the insertion of a finding in the resolution of April 15th, 1935, that all the land in the district would be benefited, and especially since the insertion was proposed and made upon the theory that the finding was "omitted by inadvertence." It will be noted that the resolution, as entered on April 15th, 1935, contained a full and comprehensive finding regarding benefits to the land.

██ We do not pursue this matter further for the reason that, even if the affidavit be regarded as sufficient proof that the county commissioners did actually find that all the land included would be benefited, as required by § 3, Laws of 1931, p. 227 (Rem. Rev. Stat., § 11580 [P. C. § 7249-12]), amending § 2, Laws of 1929, p. 219, it clearly appears that no such finding was entered as a condition precedent to the formation of the district, as required by § 4, chapter 72, Laws of 1931, p. 229 (Rem. Rev. Stat., § 11581 [P. C. § 7249-13]), amending § 3, chapter 114, Laws of 1929, p. 220, nor is this defect remedied by the commissioners' resolution *nunc pro tunc*. The office of a *nunc pro tunc* judgment, resolution or order is to make a record of something actually done, or which actually occurred, at

some previous time but was not then recorded. The *nunc pro tunc* resolution passed by the commissioners on February 8th, 1937, may show that the finding was *made* on April 15th, 1935, if their affidavit be accepted as proof that it was, in fact, then made; but it does not show, and no *nunc pro tunc* resolution could have been passed to show, that the finding was *entered* on that day, for the simple reason that it was not so entered.

It follows that water district No. 52 of King county was not legally organized and has no legal existence, unless the failure to enter the finding that all the property in the proposed district would be benefited may be disregarded as a mere irregularity. We are urged to so hold upon the authority of a number of cases and particularly upon the authority of *Richardson v. Ostlund,* 168 Wash. 638, 13 P. (2d) 2.

In that case, the commissioners passed a resolution declaring their intention to lay out a road. The resolution was drawn up, properly signed and executed, and filed among the official records of the board; but it was not recorded in their bound minute book for eighteen days. The procedure was governed by chapter 173, Laws of 1925, Ex. Ses., p. 479 (Rem. Rev. Stat., § 6447-1 [P. C. § 5992-2] *et seq.*), which is not so explicit as the law relating to the formation of water districts, in that the immediate entry in the minute book is not in terms made a condition precedent to further action. The court held that the intention of the commissioners to establish a road was sufficiently evidenced by the writing, signing, and filing of the resolution, and that the failure to enter it in the bound minute book, continuing only eighteen days, might be disregarded as a mere irregularity.

The circumstances in the case at bar are very different. We have seen that the legislature amended

the 1929 law, which required the county commissioners to enter a finding that a majority of the land included in the district would be benefited, by enacting chapter 72, Laws of 1931, p. 223, requiring the county commissioners to enter a finding that *all* the land included in the district would be benefited, and that the commissioners, acting in 1935, did not comply with the amendment.

It is urged with great earnestness that this failure to strictly comply with the statute is of slight importance and may properly be disregarded as a mere irregularity. We might yield to this argument if we were not controlled by the clear expression of the legislature in § 6, p. 233, of the amendatory act:

"This act is necessary for the immediate preservation of the public health, peace and safety and shall take effect immediately."

In the face of this emphatic legislative declaration of the importance of the act, we cannot hold that a disregard of one of its major provisions constitutes a mere irregularity.

The decree under review is reversed, and the trial court directed to grant relator an injunction as prayed for in the complaint.

STEINERT, C. J., MAIN, TOLMAN, MILLARD, and GERAGHTY, JJ., concur.

BEALS, J., dissents.

HOLCOMB, J. (dissenting)—Whatever may have been the disregard of the provisions of the act in question, it is certain that the voters were not and could not have been misled. They were well advised as to when the special election would be held for the creation of the district and its purpose.

In *Groom v. Port of Bellingham,* 189 Wash. 445,

65 P. (2d) 1060, not cited or discussed by the majority, we said:

"An election will not be declared invalid for any irregularities when it appears that the result of the election was an intelligent expression of the popular will, . . . ."

and,

"The vote was such, as compared with the votes upon other propositions, as to indicate an intelligent and well-informed expression of the popular will."

The concession that "a board of county commissioners has the same power to correct its records that a court has" is correct and concedes everything.

*Richardson v. Ostlund*, 168 Wash. 638, 13 P. (2d) 2, attempted to be distinguished by the majority, involved an eminent domain proceeding, the highest form of seizure of property known to the law, where we held that the proceedings for a county road were not invalidated by failure to record the resolution of the board of county commissioners declaring their intention and a public necessity where it was in writing duly signed and filed and was recorded eighteen days thereafter, was a sufficient compliance with Rem. Comp. Stat., § 4072 and Rem. 1927 Sup., § 6447-1, requiring the recording of all proceedings and entry of the resolution in their minutes.

Great stress is made in the prevailing opinion on the emergency declaration attached to the 1931 act, which is of small importance in considering this matter. All the emergency clause did was to declare the act necessary for the immediate preservation of the public health, peace and safety, but it prescribes no different procedure than was prescribed in the original law of 1929.

It is clear that the writ should be denied and the trial court affirmed.

BLAKE, J., concurs with HOLCOMB, J.