[No. 41364. En Banc. April 23, 1970.]

THE PACIFIC NATIONAL BANK OF SEATTLE, *Petitioner*, v. A. LUDLOW KRAMER, *as Secretary of State, et al., Respondents.**

*Perkins, Coie, Stone, Olsen & Williams, David E. Wagoner,* and *John H. Binns, Jr.,* for petitioner.

*The Attorney General* and *Arthur Verharen, Assistant,* for respondent Kramer.

*Johnson, Quigley, Hatch & Loveridge* and *Edward D. Campbell,* for respondent Siljeg.

*Hans C. H. Jensen* and *Orlo B. Kellogg,* for intervenors.

HALE, J.—Petitioner seeks a writ of mandamus directing the Secretary of State to make certain corrections and changes in the official records of his office. The petition emanates from a bankruptcy proceeding in Seattle involving the Henry House Packing Company, and a suit to recover an alleged preference now pending there in the United States District Court. A. Ludlow Kramer, as Secretary of State for the State of Washington, and Charles E. Siljeg, as Trustee in Bankruptcy for the Henry House Packing Company, are named as respondents; other parties

*Reported in 468 P.2d 436.

concerned in the bankruptcy proceeding have been allowed to intervene.

The petition, on an agreed statement of facts, raises a 2-phased issue: Whether the Secretary of State can and, in law, ought to be directed to correct admitted errors made by his office in filing corporation papers and documents. Other issues sought to be raised we deem beyond the scope of and collateral to this petition, and, therefore, not before us; their solution we leave to other forums.

June 26, 1967, Empire Packing Company and Henry House Packing Company, Inc., Washington corporations, filed at the office of Secretary of State at Olympia a 16-page typewritten document entitled "Agreement and Plan of Merger and Reorganization." It contained 27 separately numbered sections, No. 11 of which stated:

> *Surviving Company.* As a result of this merger Henry House Packing Company, Inc., shall be merged into Empire Packing Co. which shall be the surviving corporation and the Articles of Incorporation of Empire shall, upon the filing of this agreement adopted, certified and acknowledged, as required by law in the office of the Secretary of State of Washington, be and continue to be the Articles of Incorporation of the surviving corporation.
>
> The By-Laws of Empire as they shall exist at the effective date of this agreement shall be and remain the By-Laws of the surviving corporation until the same shall be altered, amended or repealed as therein provided.

Section 12 of this document stated:

> *Name.* As a part of this merger and as soon as practical thereafter the Articles of Incorporation of Empire shall be amended to provide that the name of the surviving corporation shall be HENRY HOUSE PACKING Co., INC. Harry J. Thompson is hereby granted the exclusive right to use the name "Empire" in connection with the organization and operation of a feed lot at Ephrata, Washington, which is authorized by paragraph 16.

Thus, according to section 11 of the merger agreement filed with the Secretary of State June 26, 1967, Empire Packing Company would be the surviving corporation and continue to operate under its own articles and bylaws until

they were altered, amended or repealed. Under section 12, however, which contemplated future actions, the articles declared that as soon as practical they would be amended to change the name of Empire Packing Company, the surviving corporation, to Henry House Packing Company, Inc. No such amendment of Empire's articles was filed on June 26, 1967; none was attempted to be filed until November 9, 1967.

With the filing of the merger agreement, June 26, 1967, the Secretary of State issued a printed certificate dated as of that date and executed by the filling in of blank spaces on a printed form, declaring:

I, A. LUDLOW KRAMER, Secretary of State of the State of Washington and custodian of its seal, hereby certify that MERGER AGREEMENT of EMPIRE PACKING Co. a domestic corporation of Seattle, Washington, (Merging with and into itself HENRY HOUSE PACKING Co., INC.; and changing name to HENRY HOUSE PACKING Co., INC.) was filed for record in this office at 2:15 o'clock P.M., on this date, and I further certify that such Articles remain on file in this office.

On this same date, June 26, 1967, the Secretary of State issued another certificate similarly executed and dated which said that, according to the records in his office,

[T]he annexed is a true and correct copy of the Agreement and Plan of Merger between "EMPIRE PACKING Co.", a Washington corporation, and "HENRY HOUSE PACKING Co., INC.", a Washington corporation whereby EMPIRE PACKING Co. is the surviving corporation, as received and filed in this office on June 26, 1967; I further certify that the provisions of the Merger Agreement changes [sic] the name of the surviving corporation to HENRY HOUSE PACKING Co., INC.; and I further certify that HENRY HOUSE PACKING Co., INC. is in good standing with all annual license fees paid to July 1 1967.

After June 26, 1967, certain index cards, daily listings, and other records maintained by the Secretary of State's office reflected that the name of the merged company had been changed to Henry House Packing Company, Inc. The parties agree that this listing or naming was incorrect.

Then occurred the particular errors upon which corrective action by this mandamus is sought. Nearly 5 months after the filing of the merger agreement, and the issuance of the two certificates, there were, according to the agreed facts, received for filing in the office of Secretary of State on November 9, 1967, certain articles of amendment of Empire Packing Company purporting to change its name to Henry House Packing Company, Inc. Although these articles of amendment were received on November 9, 1967, the Secretary of State's office erroneously stamped and backdated them to June 26, 1967, the date of the filing of the original merger agreement. The Secretary of State issued a certificate, showing June 26, 1967, as the date of filing, which did not indicate that the true date was November 9, 1967. The agreed facts point this out in saying that the Secretary of State

> issued a certificate stamped and backdated as though issued on June 26, 1967, certifying incorrectly that on June 26, 1967, Amended Articles of Incorporation of Empire Packing Company, changing the corporate name to Henry House Packing Company, had been filed for record at the office of the Secretary of State of the State of Washington.

Respondent Secretary of State admits the error in dating the filing of the amended articles and the certificate of filing the name change as of June 26, 1967, instead of the true date of November 9, 1967, but declines without court authority to change his records to show the true date of filing.

Petitioner asks not only that the dates of filing be corrected to show the actual dates, but that the respondent be ordered to certify that the true name of the merged company between June 26, 1967, and November 9, 1967, was "Empire Packing Company." Petitioners and intervenors—one way or another—also ask the court to indicate its ideas as to the legal effects of the misdating upon the debtor-creditor priorities in the Henry House Packing Co., Inc., bankruptcy proceeding and in the pending action for recovery of an alleged preference.

This court, as earlier observed, is not concerned here and does not rule upon either the legal sufficiency, operation or effect of the agreement and plan of merger and reorganization filed by Empire and Henry House in the office of the Secretary of State June 26, 1967, or the articles of amendment of Empire Packing Company filed with the office on November 9, 1967, but incorrectly marked filed June 26, 1967. Nor does the court determine the legal effect of the certificate issued by the Secretary of State upon the parties to or involved in the bankruptcy proceeding and preference suit. The legal sufficiency, effect and operation of the documents filed, and the certificates issued, and their indexing and cataloging by the Secretary of State upon those involved in or affected by the bankruptcy proceeding or preference suit now are or probably will be cognizable by the United States District Court and the referee in bankruptcy. Once the records and files are corrected to reflect precisely what happened, the legal consequences of the errors and corrections upon the parties are left for determination by the bankruptcy tribunal and the United States District Court. Nor do we decide the relative rights, duties and responsibilities arising under the Uniform Commercial Code, RCW 62A.9-402(1), concerning the filing of financing statements with the Secretary of State or other provisions of that code. RCW 62A.9, Part 4.

The duties imposed by law upon the Secretary of State with respect to corporations are largely ministerial and precisely defined. That officer is required to record in proper books, conveyances and all articles of incorporation (RCW 43.07.030(3)), and is the custodian "Of all books, records, deeds, parchments, maps, and papers required to be kept . . . in his office." RCW 43.07.040(4). Corporate mergers are not completed until the documents of merger have been filed in that office for the statute declares that "A merger of one or more corporations into a domestic corporation shall be effective when the joint agreement has been filed in the office of the secretary of state." RCW 23.01.490 (Now RCW Title 23A, since July 1, 1967). Amendments to articles of incorporation and change in cor-

porate name must be filed and recorded in the office of the Secretary of State. RCW 23.01.400(2)-.410(2).

Official records of the Secretary of State are open to public view. If anyone chooses to inspect any records or documents required by law to be filed in the Secretary of State's office he may do so and, upon payment of a required fee, obtain accurate copies, for the statute declares that the Secretary of State shall furnish "a certified copy of all or any part of any . . . record, or other instrument filed, deposited, or recorded in his office." RCW 43.07.030(7).

■ Thus, the statute imposed on the Secretary of State a ministerial duty to file the documents as they were received and at the time received for filing. That officer was without power, regardless of motive or purpose, to change or alter the date of filing, or give the documents an effect different from that produced by the actual date of filing or one other than their contents imparted. In another context, but on the same rationale, this court said much the same in holding that the superior court was without power to declare a tardy statement of facts timely filed, and held that a minute entry showing timeliness nunc pro tunc could not operate to change the event. *Nash v. Nash,* 23 Wn. 2nd 448, 161 P.2d 326 (1945). Again, in *State ex rel. Carr v. Superior Court,* 190 Wash. 553, 69 P.2d 1052 (1937), the court held that fatal errors in the formation of a water district could not be eradicated so as to restore legality by corrections nunc pro tunc. For general commentary on the power of recording officers to correct their records, *see* 45 Am. Jur. *Records and Recording Laws* § 71 (1943); Annot., 156 A.L.R. 1321 (1945).

■ But even though correction nunc pro tunc may not serve to make legal that which is illegal, or revive a fatally defective procedure, a public officer is not for those reasons necessarily precluded from correcting his errors. The Secretary of State in this case acknowledges the errors in filing and dating, but doubts his authority to corrrect them without authority from a court of competent jurisdiction. We consider it to be the majority rule, however, and a sound

one that a recording or filing officer may correct his errors and mistakes (*Leatherman v. Schwab,* 98 Fla. 885, 124 So. 459 (1929); *Sellers v. Sellers,* 98 N.C. 13, 3 S.E. 917 (1887); *People ex rel. Mark v. Hartquist,* 315 Ill. 228, 146 N.E. 140 (1925); *Conn v. Hudson,* 350 Pa. 626, 39 A.2d 826, 156 A.L.R. 1317 (1944); *State ex rel. Wuebker v. Bockrath,* 152 Ohio 77, 87 N.E.2d 462 (1949); *People ex rel. Schlaeger v. Buena Vista Bldg. Corp.,* 396 Ill. 164, 71 N.E.2d 10 (1947)), if such corrections and changes go no farther than to make the records and files speak the truth. And to prevent injury to persons relying upon the files, the corrections and amendments should be made in such a manner as to show the error and mistakes which have been corrected. A recording officer, therefore, may correct such errors and may make such amendments and corrections in his records and files only as are necessary to make them speak the truth provided a record is maintained of both the error and correction in such a way that anyone consulting the records and files will be fully apprised both of the error and the correction and the time and manner of each.

Accordingly, a writ of mandamus will issue directing the Secretary of State to correct the errors and amend his records so as to show the true date of filing the documents described, and to so correct and amend the records so as to show the original errors, their duration and the time and manner of correction.

ALL CONCUR.