Honorable Jeremy Randolph Lewis County Prosecuting Attorney 360 N.W. North Street, MS: PRO01 Chehalis, WA 98532-1900
Dear Prosecutor Randolph:
By letter previously acknowledged, you have requested our opinion on the following paraphrased questions concerning the powers and duties of County Auditors and Treasurers:[1]
 Must land patent documents be recorded, or may they be refused, and under what circumstances?
 Must "non-statutory abatement" documents be recorded, or may they be refused, and under what circumstances?
 May the Auditor[2] refuse to record documents presented by an individual in the name of an entity the Auditor determines not to be a legal entity?
 Must instruments that facially establish or govern a trust, under which title to real property may be held for the benefit of named individuals or other entities, be recorded or may they be refused, and under what circumstances?
 What effect does the conveyance of property into trust have on property tax liability and on the manner of collection?
 What effect does a transfer of real property into a trust, in which the original property owners remain the exclusive holders of the beneficial interest, have on the excise tax obligation? Would such a transfer be exempt from excise tax? Would it make a difference if family members are the trust officials under the family exemption to irrevocable trusts?
 May the Auditor refer documents to the Treasurer[3] for review as to excise tax determinations prior to filing, and defer to the Treasurer's conclusions in determining whether to accept such documents for filing? If such documents are recorded, are there any time constraints?
 May the Treasurer require that trust transfers be copied and submitted to the Prosecutor, Department of Revenue and/or Attorney General's Office for review and comment before processing, thereby delaying transfers to the Auditor for recording?
 BRIEF ANSWERS
We conclude that the Auditor has a mandatory duty to record documents that facially appear to be of a type that are statutorily authorized for recording, and which meet all statutory requirements as to form and payment of fees. We also conclude that, for recording purposes, the Auditor lacks the authority to determine whether a document that satisfies this facial standard truly has the legal effect that those submitting it might claim.
We therefore respond to your recording questions by concluding that the Auditor must record documents purporting to convey or affect title to real estate, including "land patent" documents that might otherwise appear questionable, and any "trust" documents that purport to convey real estate. The Auditor may not refuse to record such instruments based upon his or her own conclusions regarding the legal existence of entities submitting them for recording. We also conclude, however, that auditors are not required to record "non-statutory abatements" or "trust" instruments which do not facially convey title to real estate.
We respond to your questions concerning "trust" arrangements by concluding that the conveyance of real estate into a purportedly "tax exempt" or "pure" trust has no effect on property tax assessments.
We respond to your inquiries concerning the real estate excise tax by concluding that conveyances into trust are exempt from that tax if the beneficial ownership of the property is not changed by the conveyance. Taxes are imposed if the beneficial owners of the trust include anyone other than the original owner and his or her spouse and children. We also conclude that review of such conveyances by the Treasurer, and the affixation of the appropriate tax stamp, are necessary preconditions to recording by the Auditor and that, therefore, such documents may be referred to the Treasurer and the Auditor may rely upon the Treasurer's conclusions. Finally, we conclude that recording may not be delayed by transferring documents to the Prosecutor, Attorney General or Department of Revenue for their review.
 BACKGROUND
In your letter requesting our opinion, you explain that your County Auditor and Treasurer have received a large number of unfamiliar documents for excise tax determination and recordation. You have requested our opinion as to the filing and effect of three types of documents: (1) "land patents;" (2) "non-statutory abatements;" and, (3) "express business tax exempt foreign trusts." You also state that some of the individuals who present these documents for recording state that no excise tax is owing, either upon recording their "land patent" or upon conveying their real estate into a "trust" of which they are the beneficiary. You also explain that you see a relationship between these submissions for recording and later efforts to record "common law liens"[4] or to shield assets from sanctions or penalties in litigation with the county.
For convenience of organization, your questions can be roughly divided into three groups, each of which build upon concepts raised by previous questions. The first group relates to the recording process in the Auditor's Office. The second group adds issues related to "trusts" that are variously referred to as "express tax exempt foreign trusts," or as "pure trusts." We include your question regarding the recording of certain "trust" documents in this group so that it can be considered in context. The third group raises questions involving the real estate excise tax. We include your question regarding excise tax treatment of certain trust conveyances in this group so that it can be considered in light of general excise tax principles. We preface our discussion of each group of questions with an analysis of general principles governing each of those concepts, as background for all questions within that group.
 I. RECORDATION OF DOCUMENTS BY THE COUNTY AUDITOR
County auditors, by statute, serve as the "recorder of deeds and other instruments in writing which by law are to be filed and recorded in and for the county for which he [or she] is elected." RCW 36.22.010(1). The basic recording duty is set forth by statute, providing:
 A recording officer, upon payment or tender to him of the lawful fees therefor, shall record in his office any instrument authorized or permitted to be so recorded by the laws of this state or by the laws of the United States.
RCW 65.08.150.[5] (Citations omitted). The term "recording officer" is defined as meaning the County Auditor, or the comparable officer in a charter county. RCW 65.04.015(1).
The basic recording function is expressed as a mandatory duty. RCW65.08.150. The Auditor must record documents that are statutorily authorized, appropriate as to form, and accompanied by the proper fee. Eggert v. Ford, 21 Wn.2d 152, 154, 150 P.2d 719 (1944). This recording duty, however, is limited to those documents authorized by the recording statutes. Id. at 155; Fynn v. Garford Motor TruckCo., 149 Wn. 264, 270, 270 P. 806 (1928); accord BionomicChurch v. Gerardi, 414 A.2d 474, 476 (R.I. 1980); Op. Att'y Gen. 96-019 at 2 (Ohio 1996).
We must limit our analysis to general principles concerning the recording statutes, and leave to county authorities the ultimate conclusions as to specific documents. As the Attorney General of Ohio has aptly stated, "it is not the function of an Attorney General's opinion to make determinations as to the validity or legal effect of particular documents." Op. Att'y Gen. 96-019 at 2 n. 2 (Ohio 1996). The variety of documents that might conceivably be offered for recording is infinite, and will almost inevitably vary from the examples you provided even if titles are similar.
We turn now to your first group of questions.
 1. Must land patent documents be recorded, or may they be refused, and under what circumstances?
A land patent is simply an instrument by which the United States government conveys title to land from the government to a private owner. Federal Land Bank of Spokane v. Redwine, 51 Wn. App. 766,769, 755 P.2d 822 (1988) (citing Hilgeford v. Peoples Bank,607 F. Supp. 536, 538 (N.D. Ind. 1985), aff'd, 776 F.2d 176 (7th Cir. 1985), cert. denied, 475 U.S. 1123 (1986)). Presumably, a title search to most private property in the state would reveal root title stemming from such a patent, usually issued in the nineteenth century. See Barbizon of Utah, Inc. v. General Oil Co.,471 P.2d 148 (Utah 1970).
It appears that some individuals have recently presented such patents for recording, often accompanied by another document they have generated and described by such terms as "Declaration of Patent" or "Update of Assignment of Patent." You explain in your letter that those seeking to record these documents assert that doing so exempts their property from regulation or taxation. Various courts, both in Washington and around the country, have considered legal claims relating to "land patents" and associated documents.[6] Your question poses the more narrow inquiry of whether auditors must accept such documents for recording.
Since the general rule is that the Auditor must record "any instrument authorized or permitted to be so recorded" (RCW65.08.150), we must therefore determine whether the documents at issue are of that kind. It is clear that auditors must record original patents issued by the United States or the state of Washington, at least at the time the property is originally conveyed. RCW 65.04.030(2); RCW 65.08.090. Given the practice of also including other "declarations" or "updates" in a filing request, however, we refer instead to a more general authorization for recording.
 A conveyance of real property, when acknowledged by the person executing the same (the acknowledgement being certified as required by law), may be recorded in the office of the recording officer of the county where the property is situated.
RCW 65.08.070. The term "conveyance" is broadly defined to include "every written instrument by which any estate or interest in real property is created, transferred, mortgaged or assigned or by which the title to any real property may be affected[.]" RCW65.08.060(3). Under this more general language, the Auditor must record a document if it is properly acknowledged and if it affects an interest in real property.
We have not identified any published decisions in which courts have reviewed the acceptance or rejection of such documents by recording officers. We have, however, reviewed the formal opinions of the attorneys general of five other states in which our counterparts have advised as to whether land patent documents should or should not be recorded. The opinions of the attorneys general of sister states have turned upon their views as to the extent to which the recording officer may draw substantive conclusions about the instruments.
Those state attorneys general who have concluded that patent documents must be recorded have reasoned that the recording officer may not interpret the document in order to decide whether title is affected. "While the legal effect of such documents is questionable at best, the Register of Deeds should not be placed in the position of deciding that issue." Op. Att'y Gen. 84-48 at 2 (Kan. 1984). "While it is likely that the instrument has no legal effect, it does purport to affect real estate and should be filed[.]" Id. See also Op. Att'y Gen. 85-41 (N.D. 1985).
Those who have reached the opposite conclusion have reasoned that a recording officer must examine a document submitted for recording in order to determine whether it is of the type provided for by statute.
 When presented with a "land patent," . . . a Clerk/Register of Deeds has a duty to review the document, to determine whether the "land patent" is a grant of public land by the United States to an individual, and to reject any "land patents" that do not meet these requirements.
Op. Att'y Gen. 102 at 3 (Neb. 1985).
 Given the purpose of the recording and filing statutes, it is my opinion that the register of deeds has a duty to refuse to accept for recording or filing any instrument that on its face appears to have no legal authorization.
Op. Att'y Gen. 84-27 at 175 (S.D. 1984). By this line of reasoning, the recording officer must examine the document to determine whether it really is what it purports to be and really accomplishes what it purports to accomplish, at least on a facial basis. If the instrument is, for example, a document "executed by landowners in favor of themselves," then this analysis holds that it is not really a patent and must not be recorded. Op. Att'y Gen. 86-006 at 2-28 (Ohio 1986).
We conclude that the former analysis better comports with the laws of Washington than does the latter. The statutory definition of "conveyance" includes those instruments by which an interest in property is "created, transferred, mortgaged or assigned," but also includes those "by which title to any property may be affected[.]" RCW 65.08.060(3). If an instrument facially purports to affect title, even if it does so without transferring an interest to a second party or encumbering the property, a legal conclusion would be required in order to determine whether or not it really does affect title. It does not appear that the auditor is statutorily authorized to interpret the instrument or to render that opinion. Philadelphia II v. Gregoire, 128 Wn.2d 707, 714-15,911 P.2d 389 (1996).
We therefore conclude that if documents facially purporting to affect the title to real estate are submitted for recording, the Auditor lacks the statutory authority to determine whether the documents truly have that effect. For this reason, auditors must record "land patent" documents if they facially purport to affect title, and if they are properly executed, acknowledged, and accompanied by the proper fee.[7]
 2. Must "non-statutory abatement" documents be recorded, or may they be refused, and under what circumstances?
Our response to this question must begin by determining what is meant by the phrase "non-statutory abatement." The example you provided appears to be a document in which a company states its response to an administrative order issued by a county department. The document is directed "against" a named county official, and states that the company is returning the administrative order apparently issued by that official because, although it was received, the company refused to accept it. The balance of the document consists of various arguments asserting the invalidity of the returned documents.
We do not doubt that parties to regulatory action may put into writing their arguments as to why that action is mistaken, but we see no basis for concluding that such arguments are entitled to recording. The recording function extends only to those documents referenced by the recording statutes. Eggert, 21 Wn.2d at 155; Op. Att'y Gen. 96-019 at 2 (Ohio 1996). The example of a "non-statutory abatement" that you provided makes no facial claim regarding title to land or to any ownership or debt interest in real property. It, therefore, does not facially purport to be recordable under any of the statutes we cited in response to your first question. We are also unable to identify any other statute under which recording could be premised.
Our conclusion that such documents are not entitled to recording is consistent with the court's reasoning in Philadelphia II, which we cited in support of our conclusion to your first question. The court there held only that officers performing a ministerial duty cannot, absent statutory authority, look beyond the face of the document. Philadelphia II, 128 Wn.2d at 715. We do not believe that the court has commanded ministerial officers to utterly disregard the face of the document and refer all filing decisions for judicial review. Fischnaller v. Thurston Cy., 21 Wn. App. 280,285, 584 P.2d 483 (1978).
We therefore respond to your second question by concluding that ordinarily a "non-statutory abatement" is not entitled to recording. Unless a particular document facially purports to be one of the types of documents statutorily authorized or permitted to be recorded, the Auditor may refuse to record the document.
 3. May the Auditor refuse to record documents presented by an individual in the name of an entity the Auditor determines not to be a legal entity?
Consistent with our analysis of the previous two questions, we cannot conclude that an auditor may refuse to record an instrument based upon his or her legal conclusion that the entity submitting it is not legally constituted. As a general rule, a recording officer lacks both the statutory authority and duty to determine the substantive validity of an instrument offered for recording. Op. Att'y Gen. 96-019 at 2 (Ohio 1996) (citing Ramsey v. Riley,13 Ohio 157, 166 (1844), for the proposition that recording officers lack the authority to "ascertain whether [an instrument] be genuine or forged"). As one court explained, "[a] recorder of deeds is a purely ministerial officer. He [or she] is required by statute to record deeds filed for recording in his [or her] office and not to pass upon their validity." Redelsperger v. Redelsperger, 43 A.2d 305, 306-07 (R.I. 1945). See also 66 Am. Jur.2d Recordsand Recording Laws § 123 (1973).
We therefore conclude that an auditor may not refuse to record a document based upon the Auditor's conclusion that the entity offering it for recording is not legally constituted.
II. "TRUST" ISSUES
Your next group of questions requires a background examination of a type of "trust"[8] described in your inquiry as an "express business tax exempt foreign trust." In the example you provided, the drafters of the trust instrument also describe it as a "federal business organization"[9] and as a "pure trust organization."
As in our previous discussion of recording issues, we again emphasize that our analysis of this concept is necessarily general. Specific instruments that county officials might encounter may vary in significant ways from the example accompanying your inquiry, and therefore each must be considered on its own merits.
While they are not commonly used in Washington, a "business trust" or "Massachusetts trust" is an authorized form of business organization. RCW 23.90.030.[10] The statutory definition explains that a Massachusetts trust is an unincorporated association in which title to business property is vested in a trustee who manages the affairs of the trust for the benefit of the investors. The beneficial interest in the trust is evidenced by transferable certificates, similar to corporate stock. RCW 23.90.020; see also
13 Am.Jur.2d, Business Trusts, § 3 (1964). Advantages of this form of business organization include its greater flexibility and adaptability, when compared to corporations, since it is created pursuant to contractual agreement of the parties rather than the requirements of the Business Corporations Act. Id. at § 5; seealso Pacific American Realty Trust v. Lonctot, 62 Wn.2d 91, 97,381 P.2d 123 (1963). A comprehensive discussion of this form of business organization appears at Annot., Modern Status of theMassachusetts or Business Trust, 88 A.L.R.3d 704 (1978 and Supp. 1994).
Having noted the general proposition that this form of organization is authorized, we would be remiss if we did not also highlight the truly extraordinary volume of litigation arising from similar arrangements. Instruments purporting to establish such trusts (variously described as "business trusts," "pure trusts," "common law trusts," "family trusts," "constitutional trusts" or "equity trusts") have long been the subjects of litigation regarding their validity, or their effectiveness for a particular purpose.
The resulting trial of court decisions highlights issues relevant to your questions. In at least one case, individual "investors" sought civil remedies stemming from alleged fraudulent misrepresentations made as inducements to invest. Harazim v. Lynam,72 Cal.Rptr. 670 (Cal.App. 1968). A California court has restrained various advertising claims that it construed to be "untrue and misleading" regarding purported financial advantages of conveying assets into trust. People ex rel. Mosk v. Lynam,61 Cal.Rptr. 800, 805-06 (Cal.App. 1967). At least one attorney who participated in estab lishing trusts has been suspended from the practice of law, based upon false claims of financial advantages.People ex rel. MacFarlane v. Boyls, 591 P.2d 1315 (Colo. 1979). On another occasion, the sale of trust programs by non-attorneys was held to constitute the unauthorized practice of law. Peopleex. rel. Dunbar v. Schmitt, 251 P.2d 915 (Colo. 1952).
Claims made on behalf of such trusts often include assertions of substantial tax advantages or outright exemptions — that allegedly can follow from their establishment. The Ninth Circuit has cautioned that, "[t]hese schemes have been routinely disallowed since 1931." United States v. Brodie, 858 F.2d 492, 497
(9th Cir. 1988). In an ever lengthening line of cases, the United States Tax Court has "repeatedly held that these `pure trusts' have absolutely no tax effect whatsoever." Neve v. Commissioner, 41 T.C.M. (CCH) 798, 799 (1981). As the Oregon Tax Court explained, such concepts have "a long history in the federal courts throughout the United States wherein tax payers have lost scores of decisions and won none." Cole v. State, 9 OTR 227,244 n. 9 (1982), aff'd 655 P.2d 171 (Or. 1982).
The organizational patterns recited in such cases are strikingly similar to the pattern em ployed in the sample agreement you provided. In your example, the principal, on whose behalf the trust is established, conveys his or her property to someone designated as a "creator." In return the principal receives "Trust Stock Certificate Units" evidencing his or her beneficial interest in the trust, which in turn can be conveyed to others. The creator (in return for a fee) appoints someone to serve as "First Trustee" and conveys the principal's assets to that person in trust. The First Trustee can appoint additional trustees, and the trustees together manage the assets and decide upon any distributions to holders of the certificates. For additional details as to typical organizational patterns, see Dahlstrom v. Commissioner, 61 T.C.M. (CCH) 2863, 2864-2869 (1991), aff'd 999 F.2d 1579 (5th Cir. 1993);William L. Comer Family Equity Pure Trust v. Commissioner, 59 T.C.M. (CCH) 980, 983-84 (1990), aff'd 958 F.2d 136 (6th Cir. 1992); and, Cole, 9 Or. Tax at 230-233.
In the litigated cases, the trustees designated by the creator turn out to be the principal and/or his or her spouse, relatives, or friends. See, e.g., Comer, 59 T.C.M. (CCH) at 983; Cole,9 Or. Tax at 231. In some instances the "creator" functions as a mere straw, described in one case as, "a tour guide and taxi owner in the [Turks and Caicos] Islands, [paid] $20 to sign his name[.]"Dahlstrom, 61 T.C.M. (CCH) at 2866. The extent of economic reality underlying such trusts can, on similar facts, therefore come into question.
This does not suggest that all of the reported cases involve such murky scenarios. Some of the cases stem from reasoned disputes over the tax consequences of substantive business ventures. See,e.g., Buckley v. Commissioner, 22 T.C. 1312 (1954), aff'd231 F.2d 204 (2d Cir. 1956). Additionally, when limited to legal means, "there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible." Commissioner v. Newman,159 F.2d 848, 850-51 (2d Cir.), cert. denied, 331 U.S. 859 (1947). Courts do not, however, permit form to prevail over substance, and do not recognize transactions that do not change economic relationships in any cognizable way. Sandvall v. Commissioner, 898 F.2d 455, 458
(5th Cir. 1990); Dahlstrom, 61 T.C.M. (CCH) at 2873. Examples of such transactions have become legion.[11]
With this background, we now turn to your second set of questions.
 4. Must instruments that facially establish or govern a trust, under which title to real property may be held for the benefit of named individuals or other entities, be recorded or may they be refused, and under what circumstances?
In response to this question, we return to the basic principles discussed with regard to your first group of questions. By statute, the Auditor is required to record "any instrument authorized or permitted to be so recorded by the laws of this state or by the laws of the United States." RCW 65.08.150. We can, however, identify no statutory provision that would entitle trusts, generically, to recording.
To the contrary, Washington statutes specify quite a different filing process for business trusts. Under the Massachusetts Trust Act, no such trust can legally conduct business in Washington until it has filed its trust instrument with the Secretary of State. RCW 23.90.040(1). It, therefore, seems clear that trust instruments, unless they purport to convey real estate as well as establish the trust, must be filed with the Secretary of State rather than recorded with the Auditor.
 5. What effect does the conveyance of property into trust have on property tax liability and on the manner of collection?
A conveyance of real property into trust has no effect on property tax liability. State law exemptions from the property tax are listed in chapter 84.36 RCW. None of those provisions exempt property from taxation based upon a conveyance into a business trust, "pure trust," or other trust of the type described in our analysis introducing this group of questions.
 If the trust is validly constituted as a business trust, the trustee can take title to real estate in that capacity. RCW 23.90.020. In that event, your question is easily answered by reference to the Massachusetts Trust Act. By statute, such trusts shall pay such taxes and fees as are imposed by the laws, ordinances, and resolutions of the state of Washington and any counties and municipalities thereof on domestic and foreign corporations, respectively, on an identical basis therewith.
RCW 23.90.040(3). It is, therefore, clear that if the trust is validly constituted, then it must pay property taxes in the same manner as do corporations.[12]
The other possibility is that a court might determine that the trust is not validly constituted. Since property taxes arise from the ownership of property, this conclusion would not change the amount or incidence of taxation, but would be relevant for practical reasons, including the determination of what parties should receive notification from the county or be served with process in a foreclosure action. For those practical reasons, the validity of the trust would therefore become relevant to the manner of collection.
Courts have considered this matter extensively in federal tax cases. In such cases, "state law controls the determination of the nature and extent of the taxpayer's property interests in any given property." James E. Edwards Family Trust by Edwards v.United States, 572 F. Supp. 22, 24 (E.D.N.M. 1983). Applying state laws similar to those of Washington, courts have disregarded trust arrangements that amount to mere attempts to structure a paper entity without economic substance. Cole, 9 Or. Tax at 243
(citing Markosian v. Commissioner, 73 T.C. 1235 (1980)).
In Washington, all conveyances "made in trust for the use of the person making the same, shall be void as against the existing or subsequent creditors of such person." RCW 19.36.020. Our courts therefore can set aside a conveyance into trust for the benefit of the person making the conveyance, if necessary to protect the rights of creditors. Carroll v. Carroll, 18 Wn.2d 171, 175,138 P.2d 653 (1943). Washington has also adopted the Uniform Fraudulent Transfer Act, chapter 19.40 RCW. Under that act, a court may set aside a conveyance based, in part, on consideration of 11 "badges of fraud" listed in RCW 19.40.041(b). Sedwick v.Gwinn, 73 Wn. App. 879, 885, 873 P.2d 528 (1994). Alternatively, the conveyance can be set aside as constructively fraudulent upon appropriate facts. Id. at 888 (citing RCW 19.40.041(a)(2)).
Based upon similar laws of other states, federal courts have set aside conveyances into purported trusts on the theories that they lacked any economic substance or that the trusts were mere alter egos of the individuals whose property they contained. William L.Comer Family Equity Trust v. United States, 732 F. Supp. 755,759-60 (E.D. Mich. 1990); aff'd 966 F.2d 1455 (6th Cir. 1992);[13]United States v. Hoffman, 643 F. Supp. 346, 348-49 (E.D. Wis. 1986). Courts have reasoned that the establishment of a paper entity may be disregarded when formed merely to avoid the legal or financial consequences of the parties' actions. Comer,732 F. Supp. at 759.
Courts often examine the facts surrounding such conveyances in order to determine whether the transfer of the property to trust actually resulted in any changes as to the use of property or the lifestyles of the families involved. See, e.g., Craske v. Dept.of Revenue, 9 OTR 92, 97-98 (1981). When the paper conveyances lead to no practical changes, courts have little difficulty in disregarding the trust entity as fraudulent, or as a mere "sham."Comer, 732 F. Supp. at 760; Hoffman, 643 F. Supp. at 349;Dahlstrom, 61 T.C.M. (CCH) at 2873-74; Cole, 9 Or. Tax at 243-44. This is particularly true when the principals, or their friends or relatives, serve as nominal trustees. Hoffman, 643 F. Supp. at 347;Dahlstrom, 61 T.C.M. (CCH) at 2873; Cole, 9 Or. Tax at 231.
Just as it is the general rule that courts honor the "corporate veil" limiting liability of stock holders, those seeking to set aside a facially valid conveyance must establish to the court's satisfaction that the particular transaction is not entitled to respect. Sedwick, 73 Wn. App. at 885. It seems likely, however, that Washington courts would disregard any trust entity on facts similar to those of the cited cases established for the mere purpose of shielding individuals from their obligations or the legal consequences of their actions. RCW 19.40.071; Carroll,18 Wn.2d at 175. See also Norhawk Investments, Inc. v. SubwaySandwich Shops, Inc., 61 Wn. App. 395, 398-99, 811 P.2d 221
(1991) (describing circumstances under which a corporate form will be disregarded when it is used to violate or evade a legal duty).
We therefore respond to your fifth question by concluding that the conveyance of property into trust has no effect on property tax liability. If the trust is a validly constituted business trust, its property is taxable pursuant to RCW 23.90.040(3). If the trust is not so constituted, the conveyance does not alter the amount or incidence of tax, or qualify it for any exemption pursuant to chapter 84.36 RCW. On appropriate facts, Washington courts may set aside such a conveyance and treat the property for all purposes as the property of the principal of the trust.
 III. THE EXCISE TAX ON REAL ESTATE SALES
Real estate excise taxes arise upon every transaction that RCW82.45.010 defines as a "sale" of real property. The state excise tax is imposed pursuant to RCW 82.45.060. Cities and counties also may, at their options, impose excise taxes upon the same transactions. RCW 82.46.010, .035, .070.
The taxes are due at the time of sale. The County Treasurer collects the taxes, both state and local, upon presentation of the documents of sale for recording. WAC 458-61-015.[14] Before the instrument of sale or conveyance is recorded, the Treasurer stamps either the instrument or the real estate excise tax affidavit as evidence of payment of the tax. WAC 458-61-050(4).
No instrument evidencing a sale subject to the tax shall be accepted by the County Auditor for filing or recording until the tax has been paid and the stamp has been affixed[.]
WAC 458-61-050(7). If no tax is due on the transaction, the Auditor shall not record the instrument until the Treasurer has noted that fact on the instrument. WAC 458-61-050(7)(a).
With this background, we now turn to your third set of questions.
 6. What effect does a transfer of real property into a trust, in which the original property owners remain the exclusive holders of the beneficial interest, have on the excise tax obligation? Would such a transfer be exempt from excise tax? Would it make a difference if family members are the trust officials under the family exemption to irrevocable trusts?
As we summarized with regard to your second set of questions, some of the documents that give rise to your questions involve conveyances of property into "trust" arrangements, in which the principal of the trust retains the beneficial interest in the property, as evidenced by certificates issued by the trust. A conveyance into a trust of this type is ordinarily exempt from the state and local real estate excise taxes, because it is not a "sale" as defined by RCW 82.45.010. That statute excludes a number of transactions from the definition of "sale." Among them, the term "sale" does not include
 [a] transfer of real property, however effected, if it consists of a mere change in identity or form of ownership of an entity where there is no change in the beneficial ownership.
RCW 82.45.010(3)(n).[15]
A conveyance into an irrevocable trust is therefore not a taxable sale, if the beneficial interest in the property after the sale remains vested in favor of the original owner, including his or her spouse and children. Id. The Department of Revenue has taken the same position by administrative rule. WAC 458-61-411(1)(a). We also reached this conclusion in a previous formal opinion, which was written before the Legislature adopted the current statutory language. Op. Att'y Gen. 3 (Wash. 1969).[16]
This conclusion does not depend, as might be suggested by the last part of your question, upon whether the trustees consist of the transferor of the property and his or her family members. The basis for the statutory exemption is that the transfer does not change the beneficial ownership, and therefore does not depend upon the identity of the trustees. RCW 82.45.010(3)(n).
Two caveats remain as to this analysis, however. First, since the exemption depends upon the absence of any change in beneficial ownership, if the beneficial owners of the trust include anyone other than the transferor and his or her spouse and children, the transfer would result in a change in beneficial ownership. Under those circumstances, the transfer would constitute a sale (the trust certificates constituting consideration) and the excise taxes would be imposed. RCW 83.45.010(3)(n).
Second, even if the tax is not imposed, RCW 82.45.180 requires that the Treasurer collect a fee of two dollars for the transaction. Based upon the sample excise tax affidavits you have provided, the individuals engaging in these transactions in your county appear to accept this conclusion.
We therefore respond to your sixth question by concluding that real estate excise taxes are not imposed upon a transfer into trust, if the beneficial ownership of the property is not changed by the conveyance.
 7. May the Auditor refer documents to the Treasurer for review as to excise tax determinations prior to filing, and defer to the Treasurer's conclusions in determining whether to accept such documents for filing? If such documents are recorded, are there any time constraints?
The Auditor is prohibited from recording real estate transfer documents until the Treasurer has affixed a stamp reflecting either that the taxes have been paid or that none are due. RCW 84.45.090(1) (state tax); RCW 84.46.060 (local tax); WAC458-61-050(7) (explanation by the Department of Revenue). It is, therefore, apparent that such documents cannot be recorded until the Treasurer's stamp has been affixed. See Bionomic Church,414 A.2d at 476.
Once the document has been submitted to the Auditor in a form in which it can be recorded, the Auditor must record it "without delay." RCW 65.04.080. Real estate transfer documents, there fore, cannot be submitted for recording until the Treasurer has affixed the stamp. But once the stamp is affixed, the Auditor must record it.
 8. May the Treasurer require that trust transfers be copied and submitted to the Prosecutor, Department of Revenue and/or Attorney General's Office for review and comment before processing, thereby delaying transfers to the Auditor for recording?
We answer your final question in the negative, but with a potentially significant caveat. The Legislature has established a recording process under which the Auditor must "without delay" record instruments conveying real property into trust. RCW65.04.080. This presumes, of course, that all requirements as to form have been adhered to, including the affixation of the Treasurer's stamp (RCW 82.45.090; RCW 82.46.060), payment of applicable fees (RCW 65.04.130); and, compliance with any requirements as to form (such as necessary acknowledgements pursuant to RCW 65.08.070). While this statutory arrangement speaks to the duties of the Auditor, more so than the Treasurer, it includes neither the opportunity nor the necessity for referral to this Office or to the Department of Revenue.
We must also observe that the basic purpose of recording instruments by which real estate in conveyed is to provide notice to the world as to the ownership and status of the property.Kendrick v. Davis, 75 Wn.2d 456, 564, 452 P.2d 222 (1969). This notice, of course, is conveyed constructively only "to parties who are subsequent in the chain of title." Id. The Treasurer's affixation of the tax stamp is a statutory prerequisite to recording. WAC 458-61-050(7). Therefore, if the Treasurer's affixation of the stamp is delayed while officials consult, the potential arises that this basic purpose could be undermined. Anyone searching the record for instruments related to the property in the interim would not locate the document, even if it were later recorded.
We therefore conclude that recording cannot be delayed by submitting copies of relevant documents to either the Attorney General or the Department of Revenue, because no statute authorizes the transfer and because the statute commanding the Auditor to record "without delay" implies that the process must be completed with deliberate speed. See RCW 65.04.080.
Our caveat concerns possible consultations with the Prosecutor. As the County Prosecutor, you are the legal adviser to both the Auditor and the Treasurer as to matters relating to their official business. RCW 36.27.020(2). It is, therefore, reasonable and within the contemplation of the statute assigning you this role, that those officers consult with you as to the legal requirements of their offices. Throughout this Opinion we have repeatedly noted the general nature of our conclusions and the possibility that future specific transactions on the subjects we have addressed could vary as to legally significant facts.
For the reasons stated above, we do not believe that such consultation with counsel would justify a lengthy delay. As a general matter, officials charged with ministerial duties to file or process documents must do so, "as they [are] received and at the time received for filing." Pacific Nat'l Bank v. Kramer,77 Wn.2d 899, 904, 468 P.2d 436 (1970). If this results in an erroneous recording by the Auditor, "a recording or filing officer may correct his [or her] errors and mistakes, if such corrections and changes go no farther than to make the records and files speak the truth." Id. at 905 (citations omitted). We do not believe that this limited capacity for later correction, however, extends to decisions that lie beyond the authority of the Office, such as discussed with regard to your first group of questions.
We trust that this opinion will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JEFFREY T. EVEN Assistant Attorney General
[1] We have revised the order in which the questions appear, due to the organizational format of our response.
[2] Throughout this opinion, reference to the Auditor indicates the county official, and not the state official with the same title.
[3] Throughout this opinion, reference to the Treasurer indicates the county official, and not the state official with the same title.
[4] The phrase "nonconsensual common law lien" means a lien that is not authorized by statute or imposed pursuant to court order, and which does not depend upon the consent of a property owner for its existence. RCW 60.70.010(2)(b). County auditors have no duty to record any claim of lien unless the lien is authorized by statute or imposed by a court of proper jurisdiction. RCW 60.70.030. Additionally, a claim of lien against a federal, state, or local official or employee based upon the performance or nonperformance of that official's or employee's duty is invalid, unless it is accompanied by a court order authorizing its filing or it is authorized by a specific statute. RCW 60.70.070.
[5] The recording system is statutory in nature. "The recording of deeds and other instruments affecting the title to land is purely a system of legal institution, and not of common right or abstract justice. At common law in England, there was no system of registration[.]" 66 Am. Jur.2d Records and Recording Laws § 47 (1973).
[6] The Washington State Court of Appeals considered the legal effect of these documents in Federal Land Bank of Spokane v.Redwine, 51 Wn. App. 766, 755 P.2d 822 (1988). For citations to other state and federal courts discussing similar issues, see Op. Att'y Gen. 6 at 3-5 (Wash. 1996). We also recommend review of the recent opinion of the Wisconsin Attorney General, as to state jurisdiction over property initially conveyed by patent. Op. Att'y Gen. 2-94 (Wis. 1994).
[7] This analysis presumes that the record owner of the property is the person executing the instrument. We do not hereby express any conclusions regarding the possibility of such documents being filed with regard to the property of another, perhaps with the intent to harass the true owner. See, e.g., Op. Att'y Gen. 84-48 (Kan. 1984).
[8] Our use of the word "trust" and related terms is limited to a description of the transactions and documents under discussion, and does not convey any legal conclusion that entities so described constitute valid trusts. Additionally, concepts governing business trusts are not necessarily applicable to charitable and private trusts governed by Title 11 of the Revised Code of Washington. 13 Am. Jur.2d Business Trusts, § 1 (1964).
[9] We can find no usage or legal meaning for this term, and therefore assign it no significance in our analysis.
[10] We are aware that the sample instrument you provided includes the drafter's strenuous protest that the trust is not a "Massachusetts trust." The instrument proclaims the trust to be a unique entity governed solely by its instrument and protected by the constitutional right to freedom of contract. It is clear, however, that such contractual declarations of intent cannot dictate the legal conclusion as to the nature of the trust.Massengill v. Commissioner, 876 F.2d 616, 619 (8th Cir. 1989). "The mere designation of the form of the trust is not controlling; the court will look to the substance of the circumstances and not the labels placed on them by the parties." Johnson v. Nychyk,517 P.2d 1079, 1081 (21 Ariz. App. 186 (1974)). Additionally, our state Supreme Court has held that if the trust is not authorized by chapter 23.90 RCW, it lacks the legal authority to conduct business in the state in the first instance. Pacific AmericanRealty Trust v. Lonctot, 62 Wn.2d 91, 97-98, 381 P.2d 123 (1963).
Reliance upon the freedom of contract does not alter this result.People ex rel. Mosk v. Lynam, 61 Cal.Rptr. 800, 806 (Cal.App. 1967). Trust instruments such as those at issue are fully subject to all state regulations otherwise applicable to voluntary associations. Id. at 805-06.
[11] In addition to the cases cited in this opinion, see the extensive string cites collected in Craske v. Dept. of Revenue,9 OTR 92, 96-97 n. 3 (1981); Cole, 9 Or. Tax at 233 n. 6; andDahlstrom, 61 T.C.M. (CCH) at 2873.
[12] In the example you provided, the drafters of the trust instrument assert that the trust is a "tax-exempt foreign trust," citing as authority 26 U.S.C. § 7701(a)(31). That statute is part of the federal internal revenue code, and merely defines the term "foreign estate or trust" in terms of whether it derives income from sources outside the United States. The source of income is irrelevant to the imposition of property taxes, because "[l]iability for the ad valorem tax flows exclusively from the ownership of realty on the annual date of assessment." County ofYakima v. Confederated Tribes Bands of the Yakima Indian Nation, 502 U.S. 251, 116 L.Ed.2d 687, 702, 112 S.Ct. 683 (1992) (citing Timber Traders, Inc. v. Johnston, 87 Wn.2d 42, 47,548 P.2d 1080 (1976). This income tax statute, therefore, has no consequence as to the property tax.
[13] This case is related to the tax court case of the similar name cited previously. William L. Comer Family Equity Pure Trust v.Commissioner, 59 T.C.M. (CCH) at 996 n. 5 (1990); aff'd958 F.2d 136 (6th Cir. 1992).
[14] The Department of Revenue collects taxes on the transfer of the controlling interest in an entity which owns real property. Id.
[15] This exception appears to be a legislative reaction to the decision of our state Supreme Court in Christensen v. SkagitCounty, 66 Wn.2d 95, 401 P.2d 335 (1965). In that case the court applied the excise tax to a transfer of real property from a partnership to a corporation, where both entities were wholly owned by the same investors and the purpose of the transfer was merely to change the business form under which business was conducted. Id. at 96. The exemption currently provided by RCW82.45.010(3)(n) evolved over a series of subsequent legislative amendments. Laws of 1970 1st Ex. Sess., ch. 65, § 1; Laws of 1981, ch. 93, § 1; Laws of 1993, 1st Sp. Sess., ch. 25, § 502.
[16] This conclusion is not affected by the reservations we noted previously regarding at least some trust conveyances. Since the exemption is predicated upon the conclusion that the conveyance does not change the beneficial ownership of property, the conclusion that a particular trust is invalid would not result in the imposition of the excise tax.